**RED ALARM, INC., a California corporation, Plaintiff–Appellant,**

v.

**WAYCROSSE, INC., a Delaware corporation, doing business as Silent Knight Security Systems; Silent Knight Security Systems of Minnesota, Inc., a Minnesota corporation; Does One through Ten, inclusive, Defendants–Appellees.**

No. 93–16087.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1994.

Decided Feb. 7, 1995.

Ronald A. Rubenstein, Whiting, Rubenstein & Levy, Richmond, CA, for plaintiff-appellant.

Andre J. Cronthall, Sheppard, Mullin, Richter & Hampton, Los Angeles, CA, and Jane L. Thomas, Sheppard, Mullin, Richter & Hampton, San Francisco, CA, for defendants-appellees.

Before: HUG, CANBY, and HAWKINS, Circuit Judges.

HUG, Circuit Judge:

The issue in this case is whether the district court erred in granting summary judgment against Red Alarm on its claim that a "settlement check" sent to Silent Knight constituted an accord and satisfaction between the parties. We agree with the district court and affirm.

## FACTS

Silent Knight manufactures security alarm equipment. Red Alarm purchases security alarm equipment and installs alarm systems on the premises of its customers. In 1988, Red Alarm and Silent Knight negotiated an agreement under which Red Alarm would purchase its security equipment from Silent Knight. Silent Knight's president sent a standard dealer agreement to Red Alarm. Red Alarm's president, Nick Lawrence, made several changes to the standard agreement before signing and returning the contract.[1] Unaware of the changes, Silent Knight's president signed and executed the contract, which went into effect from January 15, 1988 until June 15, 1991. The agreement automatically renewed itself for successive one-year periods unless modified or terminated by the parties with written notice at least 60 days prior to expiration.

In 1990, Red Alarm began to experience dissatisfaction with some of Silent Knight's equipment. In February of 1992, Red Alarm sent a letter and check to Silent Knight's "lock box."[2] Although there had been substantial correspondence between the two companies over the years, this was the first time Red Alarm had sent or addressed a letter to the lock box. The letter purported to waive certain warranty claims and create additional contractual terms between the parties. Typed on the back of the check was the notation: "We agree to Red Alarm, Inc.'s proposed settlement offer dated February 21, 1992." The amount of the check was for the precise amount of a past-due invoice. The letter stated that acceptance of the enclosed check constituted Silent Knight's agreement to all of the terms stated in the letter. Because both the letter and the check were sent to the lock box, the check was automatically deposited and the letter forwarded to Silent Knight's offices.

Upon receiving the letter, Silent Knight's president promptly notified Red Alarm that it rejected the terms set forth in Red Alarm's letter and that it was retaining the check as payment for the past-due invoice. Silent Knight also stated that it would abide by the terms of the original agreement only, and that all dealings between the two companies would be on hold until Red Alarm confirmed in writing its willingness to abide by the original contract.

Red Alarm responded by declaring its intent to abide by the terms of what it referred to as its "settlement letter" as well as the original agreement. Red Alarm further asserted that because Silent Knight had cashed and retained the check, it was now bound by the terms of the settlement letter. Red Alarm enclosed with its letter a purchase order for additional equipment. Silent Knight, however, did not process the purchase order, but again requested confirmation that Red Alarm would abide solely by the terms of the original agreement. When Red Alarm refused, Silent Knight responded by notifying Red Alarm that it was terminating the parties' relationship pursuant to the original agreement.

---

1. Lawrence substituted "may" wherever the original agreement specified "shall." The changes did not alter the basic obligations under the contract and are not relevant to the issues before this court.

2. The "lock box" is an automatic check depository wherein checks sent to Silent Knight by its customers are automatically deposited into its account by its bank.

Red Alarm responded by filing suit alleging: (1) breach of the original agreement; (2) breach of the settlement letter; (3) fraud; (4) bad faith denial of a contract; (5) specific performance of the agreement embodied in the "settlement letter;" and (6) declaratory relief. Red Alarm subsequently agreed to dismiss its first, second, third and fourth causes of action. The district court, upon Silent Knight's motion for summary judgment, granted summary judgment in favor of Silent Knight on the remaining claims, finding that the "settlement letter" did not effectuate an accord and satisfaction or create a new and binding contract.

## DISCUSSION

 We review a district court's grant of summary judgment under the de novo standard. *Jones v. Union Pacific R. Co.*, 968 F.2d 937, 940 (9th Cir.1992). This court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

 The parties have agreed that California law governs this dispute. Under California law, an accord and satisfaction is the "substitution of a new agreement for and in satisfaction of a preexisting agreement between the same parties." 12 Cal.Jur.3d, *Compromise, Settlement, and Release* § 3 (1974). An accord is "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." *Id.* (citing Cal.Civ.Code § 1521 (Deering)). In other words an accord is an offer to compromise on a disputed claim. Thus, an essential element of an accord and satisfaction is the existence of a bona fide dispute between the parties. *Teledyne Mid–America Corp. v. HOH Corp.*, 486 F.2d 987, 992 (9th Cir.1973); *Moving Picture Mach. Operators Union v. Glasgow Theaters, Inc.*, 6 Cal.App.3d 395, 86 Cal.Rptr. 33, 38 (1970).

 In the present case, the district court found there was no bona fide dispute as to the amount due Silent Knight. Silent Knight filed with the district court an unopposed statement of undisputed facts. Undisputed fact number 9 notes that the check enclosed with the settlement letter was for $4,661.33, the precise amount of the past due invoice. This statement also references declarations that the settlement letter did not dispute Red Alarm's duty to pay the full amount due on the invoice. However, Red Alarm did purport to waive all of its warranty claims in exchange for Silent Knight's acceptance of the enclosed check and new contractual terms. Red Alarm also sent a series of letters citing the warranty provisions of the original dealer agreement as well as dates and locations of alleged warranty violations. These letters also estimated the value of the warranty claims. On this record as a whole, we conclude that there were disputed claims between the parties, even though it was not disputed that Silent Knight had sent an invoice for $4,661.33 to Red Alarm which was past due and unpaid. Accordingly, a sufficient dispute existed between the parties to permit an accord and satisfaction. *See, e.g., Grayhill Drilling Co. v. Superior Oil Co.*, 39 Cal.2d 751, 249 P.2d 21, 22 (1952) (dispute need only be honest and not necessarily rest on solid foundation to be bona fide). In this one respect, we disagree with the district court.

 Nevertheless, before an accord and satisfaction can be fully effectuated, the offer of compromise must be accepted by the offeree. *See* 12 Cal.Jur.3d, *Compromise, Settlement, and Release* § 4 (1974). In this case, the settlement letter stated that cashing the enclosed check would constitute an acceptance, and the check stated, at the top of the reverse side: "We agree to Red Alarm, Inc.'s proposed settlement offer dated February 21, 1992." However, because Red Alarm sent the check and the letter to Silent Knight's lock box, the check was cashed automatically while Silent Knight was still unaware of the terms stated in the letter or of the notation on the check. California Civil Code section 1526 provides in relevant part:

(a) Where a claim is disputed or unliquidated and a check or draft is tendered by the debtor in settlement thereof in full discharge of the claim, and the words "payment in full" or other words of similar meaning are notated on the check or draft, the acceptance of the check or draft does not constitute an accord and satisfaction if the creditor protests against accepting the tender in full payment by striking out or otherwise deleting that notation or if the acceptance of the check or draft was inadvertent or without knowledge of the notation.

Cal.Civ.Code § 1526(a) (Supp.1995).

Here, Silent Knight's initial "acceptance" of the check was clearly "inadvertent" and "without knowledge of the notation." Red Alarm argues that although the cashing of the check may not have constituted acceptance of the accord, Silent Knight nevertheless accepted when it decided to retain the check after becoming aware of the letter's terms. In support of this proposition Red Alarm relies on *Teledyne Mid–America Corp.*, 486 F.2d at 993–94 (holding that continued retention of funds without protest after the creditor became fully aware of terms of compromise was sufficient to bind him to accord and satisfaction). However, Civil Code section 1526(a), enacted in 1987, changes California common law and allows a creditor to accept the debtor's check if it strikes out the "payment in full" language or if the acceptance of the check was inadvertent or without notice of the notation, both of which it was.

Section 1526(a) was obviously designed for the situation where a debtor sends a check for *less* than the amount owed, with a notation that attempts to compromise a larger indebtedness. This case is peculiar because, by reason of its purported warranty claims, Red Alarm is essentially claiming that it sent a check for *more* than it owed, in order to achieve its compromise. Nevertheless, the literal terms of section 1526(a) apply, and the statute's purpose clearly encompasses this case. Section 1526(a) is obviously designed to prevent a debtor from making a payment on his debt that forces the creditor into a compromise of other legal entitlements. Red

Alarm has attempted to do exactly that which section 1526(a) prevents. Because the acceptance was inadvertent and without notice, Silent Knight's acceptance of the check does not constitute an accord and satisfaction; it is simply payment of the $4,661.33 invoice.

If Silent Knight had acted in some other way, wholly apart from acceptance of the check, to indicate its assent to Red Alarm's compromise offer, then it might have reached an accord and satisfaction. But Silent Knight, upon becoming aware of the compromise letter's contents, promptly notified Red Alarm that it did not consent to its terms. As a result, there never was any acceptance, and thus there was no accord and satisfaction.

■ Red Alarm argues, however, that Silent Knight is precluded from receiving the benefit of section 1526(a) because of section 1526(c). Section 1526(c) states:

(c) Notwithstanding subdivision (a), the acceptance of a check or draft by a creditor constitutes an accord and satisfaction when the check or draft is issued pursuant to or in conjunction with a release of a claim.

Cal.Civ.Code § 1526(c) (Supp.1995).

Red Alarm argues that, because its letter offered to waive its warranty claims, it was a "release of a claim" within the meaning of section 1526(c). It therefore asserts that Silent Knight's acceptance of the check effectuated an accord and satisfaction.

At first glance, Red Alarm's proposition seems to follow from the plain words of section 1526(c). It is clear, however, that section 1526(c) cannot be read as expansively as its language might permit. Every proposed accord and satisfaction can be construed to involve a release of the compromised claims. If section 1526(c) is interpreted that broadly, then it will completely vitiate section 1526(a). *See* Burnham, *Accord and Satisfaction in California: A Trap for the Unwary*, 30 Santa Clara L.Rev. 473, 492–93 (1990). Section 1526(c) therefore must be read with the intention of the entire statute in mind. Section 1526(a), as we have said, was designed to protect creditors from compromise of claims by acceptance of a check

that pays only part of an obligation. Section 1526(c) is designed to permit a person who pays for a release of a claim to rely on the acceptance of the check as an effectuation of the release. That purpose is not served by applying section 1526(c) to ·Red Alarm.

Red Alarm did not purchase a release. It paid an invoice and *offered* a release (perhaps in a vain attempt to trigger section 1526(c)). It does not seek to effectuate that release; it seeks to use the release as a tool to effectuate a new contract wholly apart from the claims it offered to release. The purpose of section 1526(c) would clearly not be served by applying it in this circumstance. We conclude that section 1526(c) is inapplicable.

## CONCLUSION

Because we find under the facts of this case and California Civil Code section 1526(a) that Silent Knight's acts did not constitute an accord and satisfaction, we affirm the judgment of the district court.

**AFFIRMED.**