**DIRECTORS GUILD OF AMERICA,**
**et al., Plaintiffs,**

v.

**HARMONY PICTURES, INC.,**
**et al., Defendants.**

**No. CV 97–8359 AHM (MANx).**

United States District Court,
C.D. California.

Sept. 29, 1998.

Robert A. Bush, Geffner & Bush, Burbank, CA, for plaintiffs.

John F. Friedemann, Friedemann & Maurer, Healdsburg, CA, for defendants.

ORDER GRANTING MOTION OF DEFENDANTS HARMONY PICTURES AND MELODY FILMS FOR PARTIAL SUMMARY JUDGMENT AND DENYING DGA'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

MATZ, District Judge.

These cross-motions for partial summary judgment raise a novel issue. Directors Guild of America—Producer Pension Plan and the Directors Guild of America—Producer Health Plan ("DGA") received a check drawn by the production companies, Defendants Harmony Pictures, Inc. and Melody Film, Inc. ("HPMF") which contained the notation "Full and final settlement for the audit period 6/1/90 to 5/31/94" on the reverse side of the check. Along with the check, HPMF sent DGA a letter stating that, in an effort to resolve the dispute between the parties, it had enclosed the check which represented full and final payment and settlement of the parties' dispute. DGA crossed out the notation on the check, endorsed and cashed it, and simultaneously sent a letter to HPMF stating that the check would not satisfy the remaining amount of HPMF's outstanding debt.

This scenario is not novel. What is novel is that there are two apparently conflicting California statutes dealing with whether DGA's cashing of the check constitutes an accord and satisfaction precluding it from further recovery. No court has been required to determine which provision is applicable under these facts.

DGA relies upon California Civil Code section 1526, which generally provides that a creditor may cross out language purporting to create an accord and satisfaction, cash the check, and still be entitled to go after the difference. HPMF, on the other hand, relies upon California Commercial Code section 3311, which generally provides that even if the creditor crosses out the restrictive endorsement, he nevertheless is deemed to have accepted the debtor's proposed terms of settlement, and cannot recover an additional amount.

There is no published authority indicating whether these statutory provisions may be reconciled or, in the event that they may not, which of them controls. As explained more fully below, the Court concludes that under the facts in this case, the statutes may not be reconciled. Because they conflict, the Court gives controlling effect to the later-enacted statute, Commercial Code section 3311. Applying that statute to the undisputed facts, the Court grants HPMF's motion on the ground that DGA's endorsement and cashing of HPMF's check effectuated an accord and satisfaction that discharged HPMF from further liability on the debt for which it was tendering its offer of settlement.

**II.**

**CASE BACKGROUND**

DGA claims that HPMF failed to pay or underpaid contributions to its pension and

health plans, thereby violating ERISA. DGA seeks to recover contributions, interest, audit fees, and liquidated damages for the audit period June 1, 1990 through May 31, 1994.

Specifically, DGA contends that HPMF is bound by certain collective bargaining agreements with DGA and with certain Trust Agreements creating the DGA–Producer Pension and Health Plans ("Plans"). DGA contends that HPMF failed to pay fringe benefit contributions to the Plans, as required by the collective bargaining agreements, and that HPMF failed to cooperate with the Plans' audit of their payroll and related records, as required by the Trust Agreements. DGA contends that HPMF failed to make "contributions in accordance with the terms and conditions" of the Trust Agreements, in violation of 29 U.S.C. § 1145. DGA therefore brought this action to compel entry of the audit and recovery of delinquent contributions, liquidated damages, interest, attorneys' fees and costs, the costs of audit, and all additional relief deemed proper, pursuant to 29 U.S.C. § 1132(g)(2).

Presently before the Court are DGA's motion for partial summary judgment seeking dismissal of HPMF's affirmative defense of accord and satisfaction and HPMF's cross-motion for summary judgment upholding that defense.

### III.

### UNDISPUTED FACTS

The parties essentially agree on the facts, but dispute their legal effect. Those facts, taken from their stipulation and unobjected-to declarations, are as follows:

DGA is made up of multi-employee welfare benefit plans maintained for the purpose of providing health and retirement benefits for certain members of the Directors Guild of America, Inc. who are employed by motion picture and television producers.

HPMF produced television commercials and hired members of DGA during the periods covered by this action.

DGA engaged the professional accounting firm of Nigro, Karlin & Segal ("NKS") to audit the books and records of HPMF to determine the accuracy of contributions made to DGA.

By letter dated August 18, 1995, Denise Hart of NKS informed HPMF's Chief Financial Officer, Brian Rackohn, that it would be conducting an audit of HPMF and requested certain records for review. HPMF contested the scope and extent of the audit conducted by NKS.

On July 23, 1997, DGA sent a letter to Harmony regarding the findings of the audit conducted by NKS. The letter contended that HPMF owed DGA $67,111.64 in further contributions, $34,037.70 in interest and $8,442.90 in audit fees, for a total of $109,592.24.

On August 21, 1997, NKS sent a letter to Rackohn enclosing a list of allegedly unresolved items and requesting further information to complete the audit. Sometime prior to August 26, 1997, Rackohn spoke by telephone with Lisa Read, Manager of DGA's Audit Department. During that conversation, Rackohn and Read discussed several contested issues with respect to NKS' August 21, 1997 letter and its enclosures. Rackohn also informed Read of HPMF's desire to settle the audit issues without having to hire attorneys and incur other fees. According to Rackohn, Read stated that if HPMF wished to resolve DGA's claim for the audit, he should submit a written settlement proposal for DGA consideration. Rackohn responded that he would do so.

On August 26, 1997, Rackohn sent Lisa Read a letter detailing certain disagreements which HPMF had with the NKS audit. The letter concluded as follows:

> In an effort to settle the above issues and the open items on the Nigro, Karlin & Segal's August 21, 1997 letter, [Harmony and Melody] have included a check for $67,111.64 as full and final payment and settlement of any and all contributions, interest, audit fees, and liquidated damages due for the audit period June 1, 1990 through May 31, 1994.

Pursuant to this letter, Rackohn enclosed check number 14248 in the amount of $67,111.64 (the "Check"). This figure constituted the entire amount of the alleged delinquent

contributions identified in the First Interim Audit Report, but did not include interest and audit fees which DGA had requested. On the reverse side of the Check in the space provided for endorsement, HPMF placed the following notation: "Full and final settlement for the audit period 6/1/90 to 5/31/94."

After receiving Rackohn's August 26, 1997 letter and accompanying Check, Read read the letter, observed the last paragraph of the letter and saw the notation on the reverse side of the Check.

Read responded to Rackohn's August 26, 1997 letter by letter dated August 27, 1997. (The parties do not state whether Read sent her letter by mail, facsimile or otherwise.) In her letter, Read acknowledged receipt of the Check, stated that the Check had been deposited, and further state:

> This does not represent full and final settlement. Interest of $34,037.70 and audit fees of $8,442.90 for a total of $42,-480.60 remains due.

> However, your letter will be presented to the Trustees of the Legal & Delinquency Committee at their next meeting for their review and consideration. You will be notified of their decision in writing immediately thereafter. As the Plans' audit has yet to be completed, additional findings may be issued.

On that same date, August 27, 1997, Read struck out the words written on the reverse side of the Check and deposited it into DGA's bank account.

Almost three weeks later, by letter dated September 15, 1997, Read informed Rackohn that DGA's Legal & Delinquency Committee had rejected HPMF's settlement proposal. By the time HPMF received that letter, it was too late to stop payment on the Check. On September 26, 1997, HPMF advised Read by letter that HPMF contended that DGA's acceptance of the Check constituted a full and final settlement of the dispute. HPMF's letter referenced California Commercial Code section 3311.

On October 10, 1997, DGA responded to HPMF's letter, stating that by striking the payment-in-full language on the Check, it had preserved its rights to collect interest and audit fees. That letter referenced California Civil Code section 1526.

Before HPMF tendered the Check to DGA, DGA had never sent a written statement to HPMF that communications concerning disputed debts, including an instrument tendered as full satisfaction of debt, were to be sent to a designated person, office or place. Nor did DGA tender repayment of the amount of the Check to HPMF within ninety (90) days after cashing it.

## IV.

### LEGAL STANDARDS

Fed.R.Civ.P. 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(d) permits the entry of partial summary judgment. The Supreme Court clarified the standard for summary judgment in three important cases. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its admissible evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252, 106 S.Ct. 2505. As the Court explained in *Matsushita:*

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

475 U.S. at 586–87, 106 S.Ct. 1348. The evidence relied upon must be admissible under the rules governing the admission of evidence generally. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542 (9th Cir.1989)

## V.

## DISCUSSION

California Civil Code section 1526 provides in pertinent part:

**Check or draft tendered in full discharge of claim; acceptance; protest; composition or extension agreement between debtor and creditors; release of claim.**

(a) Where a claim is disputed or unliquidated and a check or draft is tendered by the debtor in settlement thereof in full discharge of the claim, and the words "payment in full" or other words of similar meaning are notated on the check or draft, the acceptance of the check or draft does not constitute an accord and satisfaction if the creditor protests against accepting the tender in full payment by striking out or otherwise deleting that notation or if the acceptance of the check or draft was inadvertent or without knowledge of the notation.

\* \* \* \* \* \*

(c) Notwithstanding subdivision (a), the acceptance of a check or draft by a creditor constitutes an accord and satisfaction when the check or draft is issued pursuant to or in conjunction with a release of a claim.

\* \* \* \* \* \*

California Commercial Code section 3311 provides in pertinent part:

**Satisfaction of claim by use of instrument.**

(a) If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subdivisions apply.

(b) Unless subdivision (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.[1]

---

1. Commercial Code section 3311, subsections (c) and (d), provide:

> Subject to subdivision (d), a claim is not discharged under subdivision (b) if either of the following applies:
>
> (1) The claimant, if an organization, proves that (A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered

as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (B) the instrument or accompanying communication was not received by that designated person, office, or place.

> (2) The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant

■ In light of these apparently conflicting statutes, the Court must determine which statute applies to the undisputed facts. If both apply, the Court must then determine whether they may be reconciled, and if not, which provision controls.

## A. Both Civil Code Section 1526 and Commercial Code Section 3311 Apply.

DGA does not dispute that HPMF has met its burden of establishing each element of subdivisions (a) and (b) of Commercial Code section 3311, and that subdivisions (c) and (d) are not applicable to the facts in this case. Instead, DGA argues that Civil Code section 1526(a) also applies and that its provisions govern this dispute.

HPMF argues that even if section 1526(a) was not rendered inapplicable by the later-enacted Commercial Code, it nevertheless cannot be applied because Civil Code section 1526(c) (confirming an accord and satisfaction where the check was issued "in conjunction with a release of a claim") applies, since the letter Rackohn sent along with the Check constitutes a "release" within the meaning of the statute. In response, DGA argues that the August 26, 1997 letter did not operate as a "release," citing *Red Alarm, Inc. v. Waycrosse, Inc.,* 47 F.3d 999 (9th Cir.1995).

In *Red Alarm,* a security alarm dealer in payment arrears to the alarm manufacturer with which it had regularly conducted business, sent a letter and check in the amount of those arrears to the manufacturer's lock box. The letter purported to waive certain warranty claims and create additional contractual terms between the parties. Typed on the back of the check was the notation "We agree to Red Alarm, Inc.'s proposed settlement offer dated February 21, 1992." *Id.* at 1001. The manufacturer deposited the check. Upon subsequent review of the letter, the manufacturer promptly notified the dealer that it would retain the money but that it would not agree to the dealer's pro-

posed contract modifications. The dealer argued that the manufacturer could not avail itself of the protections of Civil Code section 1526(a) because the dealer's letter constituted a "release of the claim" within the meaning of section 1526(c). *Id.* at 1003. The Ninth Circuit rejected this argument, explaining that under the dealer's construction,

> [e]very proposed accord and satisfaction can be construed to involve a release of the compromised claims. If section 1526(c) is interpreted that broadly, then it will completely vitiate section 1526(a). Section 1526(c) therefore must be read with the intention of the entire statute in mind.

*Id.*

Here, too, HPMF's argument that its letter constituted a "release" under section 1526(c) would essentially eliminate section 1526(a). The language in HPMF's letter proposing settlement was nothing more than a slightly more detailed version of what it typed on the back of the Check. *Compare* Rackohn's August 26 letter ("HPMF ha[s] included a check for $67,111.64 as full and final payment and settlement of any and all contributions, interest, audit fees, and liquidated damages due for the audit period June 1, 1990 through May 31, 1994") *with* the back of the Check ("Full and final settlement for the audit period 6/1/90 to 5/31/94"). Under HPMF's argument, then, a debtor could preclude the application of section 1526(a) merely by including with the check a letter stating that the check constituted "payment in full." For all practical purposes, this construction would eliminate a creditor's ability to preserve its rights under section 1526(a) by crossing out the notation on the check. The reference to "release" in section 1526(c) must therefore contemplate a mutual understanding (not necessarily in writing) that was reached before the debtor issued the check containing the notation. This construction would enable a creditor and debtor to reach a compromise, and have it reflected via the

---

is an organization that sent a statement complying with subparagraph (A) of paragraph (1). (d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibil-

ity with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

The parties agree that none of the exceptions in subdivision (c) apply to this case. Nor do any of the parties argue that ERISA preempts application of either provision.

restrictive notation on the check, without requiring a more elaborate (and costly) full-fledged written release. This Court therefore concludes that the letter HPMF enclosed with its check does not constitute a "release" under Civil Code section 1526(c).

Because both Civil Code section 1526(a) and Commercial Code section 3311 apply to the undisputed facts (and application of each appears to require a different result), to avoid determining that the Legislature impliedly repealed Civil Code section 1526 when it subsequently enacted Commercial Code section 3311, the Court will next attempt to reconcile this apparent conflict.

### B. Civil Code Section 1526 and Commercial Code Section 3311 Cannot Be Reconciled to Avoid Conflict.

#### 1. Effectuating Legislative Intent.

 The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. *Pacific Gas and Electric Co. v. County of Stanislaus,* 16 Cal.4th 1143, 1152, 69 Cal.Rptr.2d 329, 947 P.2d 291 (1997). To achieve this goal, a Court must first examine the plain words of the respective statutes. *Id.* When dealing with apparently conflicting statutes, the general rule is that "[s]tatutes that are apparently in conflict should, if reasonably possible, be reconciled." *Walters v. Weed,* 45 Cal.3d 1, 9, 246 Cal.Rptr. 5, 752 P.2d 443 (1988). If two statutes conflict, "we should give effect to the more recently enacted law." *Bledstein v. Superior Court (Jeziorski),* 162 Cal.App.3d 152, 208 Cal.Rptr. 428 (1984). This rule, however, "is invoked only if the two cannot be harmonized." *Id.*

### 2. History of Civil Code Section 1526 and Commercial Code Section 3311.

Before the 1987 enactment of Civil Code section 1526, California common law provided that where a claim was disputed or unliquidated, the debtor's tender of a check that notified the creditor that it must be accepted in full discharge of the claim or not at all resulted in an "accord and satisfaction" once the creditor cashed the check, even if the creditor protested against accepting the tender as full payment. *Potter v. Pacific Coast Lumber Co.,* 37 Cal.2d 592, 597, 234 P.2d 16 (1951).

In 1987, the Legislature enacted Civil Code section 1526. It changed the common law *Potter* rule by allowing a creditor to strike or otherwise delete the notice of full payment on the check and cash it without effectuating an accord and satisfaction. In enacting this provision, the Legislature specifically noted that it was changing the applicable case law. *See* 1987 Cal. Legis. Serv. 1268, SB 1684, c. 1268 (1987–88 sess.).[2]

In 1992, in the course of substantially revising Article 3 of California's version of the Uniform Commercial Code governing negotiable instruments, the Legislature enacted Commercial Code section 3311.

Unfortunately, as both parties agree, nowhere in the Legislative history of this 1992 revision did any legislator or other person expressly mention Civil Code section 1526.[3] The Legislative Counsel's Digest does note that "This bill would repeal the existing provisions concerning negotiable instruments, and would enact new provisions on that subject proposed by the National Conference of

---

2. The Legislative Counsel's Digest provided:

Existing case law has held that where a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted in full discharge of his or her claim or not at all, the retention and use of that check may constitute an accord and satisfaction.

This bill would, in cases where the words "payment in full" or words of similar meaning are notated on a check or draft, provide that the acceptance of the check or draft does not constitute an accord and satisfaction if the creditor protests against accepting the tender in full payment by striking out or otherwise

deleting that notation or if the acceptance was inadvertent or without knowledge of the notation; however, such a check or draft would constitute an accord and satisfaction if the check or draft is tendered pursuant to a composition or extension agreement between debtor and creditor, all creditors are accorded similar treatment, and the creditor receives the check or draft with knowledge of the restriction, as specified or, where the check or draft is issued pursuant to, or in conjunction with, a release of a claim.

3. HPMF requests that this Court take judicial notice of Commercial Code section 3311's legislative history. DGA joins in this request. Accordingly, the request is granted.

Commissions on Uniform State Laws." Civil Code section 1526 is certainly a "provision concerning negotiable instruments," even though it is not in the Commercial Code. This fact is not dispositive, however, because the Legislature did not specifically repeal *all* provisions concerning negotiable instruments, but rather, those "provisions *of the Commercial Code* set[ting] forth provisions that govern negotiable instruments." 1992 Cal. Legis. Service 3727, c. 914 SB 833 (emphasis added). Because Civil Code section 1526 was not part of the Commercial Code, it was not expressly repealed. Thus, the Legislative History does not establish just what the Legislature's purpose and interest was, vis-a-vis Civil Code section 1526.

### 3. Civil Code Section 1526 and Commercial Code Section 3311 Cannot Be Reconciled.

HPMF wants Commercial Code section 3311 to apply. In an attempt to reconcile that provision with Civil Code section 1526, HPMF points out that Civil Code section 1526(a) refers only to notations on checks and drafts, but does not mention instances (such as the one here) where the debtor sends a letter along with the check. Commercial Code section 3311, on the other hand, refers to "an instrument *or* an accompanying written communication." (Emphasis added.) HPMF argues, therefore, that in instances where correspondence, such as its August 26, 1997 letter, accompanies the check, Commercial Code section 3311 should apply; in other circumstances, Civil Code section 1526(a) would apply. HPMF Motion at 15–16 (citing an unpublished paper prepared for a conference of commercial attorneys by Steven O. Weise, Esq.). This argument is not persuasive. As DGA correctly points out, nothing in Civil Code section 1526 precludes its application where correspondence accompanies the check. HPMF's construction would essentially add the phrase "unless the check is accompanied by written correspondence" to section 1526, contrary to Code of Civil Procedure section 1858 (stating that when construing a statute, a court should not "insert what has been omitted"). *See Western/California v. Dry Creek Joint,* 50 Cal.App.4th 1461, 1486, 58 Cal.Rptr.2d 220 (1996).

Having crossed out the notation, DGA wants Section 1526(a) to apply. So for their part, DGA, too, proposes an alternative construction to avoid direct conflict. It argues that Civil Code section 1526 and Commercial Code section 3311 should be construed as part of a comprehensive effort to provide three different protections to creditors to whom checks containing restrictive language are sent. First, under Commercial Code section 3311(c), a creditor who deposits a notated check without seeing the notation can prevent settlement by repaying the debtor within 90 days of payment. Second, Commercial Code section 3311(c) also allows a creditor to require that communications regarding disputed debts be sent to a particular person or place, and if that requirement is not met, then the claim is not discharged even if the creditor cashes the check. Third, under Civil Code section 1526, a creditor who sees a conditional notation can protest the condition and avoid an accord and satisfaction.

DGA's argument also is not persuasive. Under DGA's argument, Commercial Code section 3311's purpose of benefitting debtors and promoting settlements could be swiftly negated by permitting the creditor to engraft Civil Code section 1526 onto Commercial Code section 3311(c), as another "exception." In the real world, of course, the exception would swallow the rule; every creditor receiving a check tendered in settlement of a disputed claim would cross out the satisfaction language and endorse the check, just as DGA did here. Put differently, what incentive would a creditor, even one who actually knew about Commercial Code section 3311, ever have to accept less than full payment of his claim and forego the rest, if instead he could preserve the right to threaten suit or even sue for the remainder, merely by crossing out the notation? In these circumstances, in short, creditors would always "take the money and run" (to the nearest bank). Under DGA's analysis, Commercial Code section 3311 would then have no meaningful function in California.

As support for its position, DGA also relies upon the Ninth Circuit's construction of Civil Code section 1526 in *Red Alarm, Inc., supra,* 47 F.3d 999, discussed above. That case is

inapposite. Nowhere in *Red Alarm* does the appellate court mention or discuss Commercial Code section 3311.[4] This is not surprising, of course, since the alleged accord and satisfaction in *Red Alarm* arose in 1992, prior to Commercial Code section 3311's January 1, 1993 effective date. Morever, the debtor in *Red Alarm* sent the check to a lock box without advance notice whereas here, HPMF sent the check and letter to the person handling the audit for DGA.

This Court therefore concludes that relevant portions of Civil Code section 1526 and Commercial Code section 3311 are in conflict.

**B. Because Relevant Portions of Civil Code Section 1526 and Commercial Code Section 3311 Conflict, this Court Will Give Effect to the Later-Enacted Commercial Code Section 3311.**

The parties agree that "[w]hen two acts governing the same subject matter cannot be reconciled, the later in time will prevail over the earlier." *L.A. Police Protective League v. City of Los Angeles,* 27 Cal.App.4th 168, 179, 32 Cal.Rptr.2d 574 (1994). Here, the Legislature enacted Civil Code section 1526 in 1987 and enacted Commercial Code section 3311 in 1992. This Court will thereby give effect to the later statute. Under Commercial Code section 3311, DGA's striking of the satisfaction language on the settlement check did not entitle it to continue disputing the remaining portion of its claim.

**C. The Accord and Satisfaction Is Limited In Scope.**

■ Because the Court finds that HPMF's proposed settlement language constituted an accord and satisfaction under Commercial Code section 3311, the Court must next determine the scope of the accord and satisfaction. The terms of a settlement arising out

of the "letter plus restrictive-notation-on-check" approach that HPMF took are limited to what is expressly referenced in the check and accompanying letter. In accordance with Rackohn's August 26, 1997 letter (written in response to DGA's August 21, 1997 letter and enclosures) the settlement only resolved the dispute concerning all contributions, interest, audit fees, and liquidated damages due for the audit period June 1, 1990 through May 31, 1994, with respect to the First Interim Audit report and the claims referenced in the invoice and "Open Items" list.[5] *Compare* DGA's August 21, 1997 letter *with* HPMF's August 26,1997 letter. Accordingly, only as to this specified dispute does the Court grant HPMF's motion for partial summary judgment.

The Court commends counsel on the high quality of their motion papers.

## CONCLUSION

For all the above reasons, and good cause appearing therefor, the Court orders as follows:

1. Defendants HPMF's motion for partial summary judgment is granted; by negotiating HPMF's August 26, 1997 check and not tendering repayment within 90 days, DGA waived its right to pursue its claim for all contributions, interest, audit fees, and liquidated damages due for the audit period June 1, 1990 through May 31, 1994 with respect to the First Interim Audit report and the claims referenced in the invoice and "Open Items" list.

2. DGA's motion for partial summary judgment is denied.

IT IS SO ORDERED.

---

4. Similarly, in *In re Van Buren Plaza, Inc.,* 200 B.R. 384 (C.D.Cal.1996), the Court did not even recognize the existence of Commercial Code section 3311.

5. For example, the "Open Items" Report concerned the compensation and work performed by David Butler, Wilford Day, David Jellison, John Kelly and Jeffrey Tuttle. It also referenced potential "principal directors" Randy Akers, Chris Menges, Bill Robbins, Rebecca Blake, Phyllis

Koenig and Sharon E. Starr. Neither the First Interim Report nor the "Open Items" list included compensation for work performed by Directors Scott Bibo and James Baker Smith. Nor does HPMF argue that these named directors were the directors discussed in general terms in Rackohn's August 26, 1997, letter. Absent a more specific showing, and drawing all reasonable inferences in DGA's favor, this Court cannot conclude that Rackohn's letter covered payments relating to these additional individuals.