# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00249-CV

**Texas Lottery Commission, Appellant**

**v.**

**First State Bank of DeQueen, Stone Street Capital, Inc. and Cletius L. Irvan, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-06-004663, HONORABLE DERWOOD JOHNSON, JUDGE PRESIDING

## O P I N I O N

In 1995, appellee Cletius Irvan won approximately $9 million in the Texas Lottery, to be paid in annual installments of around $450,000. Pursuant to an Arkansas court order that has been domesticated in Texas, Irvan has attempted to sell and assign his right to receive the last two installment payments, which are due in 2013 and 2014. The lottery act (at least as interpreted by the Texas Lottery Commission) explicitly prohibits this assignment, while the Texas UCC not only allows such assignments, but provides that any state law restricting them is, to that extent, rendered ineffective. The question presented in this appeal is which statute controls. Agreeing with the district court that the UCC controls, we affirm its judgment.

## THE STATUTES

**Lottery act**

Section 466.406 of the government code prohibits the assignment of a right to receive a Texas Lottery prize "[e]xcept as provided in this section and Section 466.410." Tex. Gov't Code Ann. § 466.406(a) (West 2004). Section 466.406 provides that (1) prize payments to a deceased individual prizewinner can be made to his estate; and (2) a winner's prize can be "paid to any person under an appropriate judicial order." *Id.* § 466.406(b)-(c). In section 466.410, the legislature authorized assignment of the right to receive future installment prize payments made by the lottery commission if approved by an order of a Travis County district court. *Id.* § 466.410(a) (West 2004).[1] Such an order shall issue if several procedural and consumer-protection requirements are satisfied. *Id.* § 466.410(b). Among other requirements:

- a petition for the order must be filed and a copy served on the Commission, which is entitled to intervene "to protect the interests of the commission"

- the assignment must be in writing and, by its terms, made subject to the laws of this state

- the assignor must provide a sworn and notarized statement that the assignor is of sound mind and is not acting under duress; has been advised regarding the assignment by independent legal counsel and "has had the opportunity to receive independent financial and tax advice concerning the effects of the

---

[1] The Commission has construed the "appropriate judicial order" referenced in section 466.406(c) to apply only to a court order that "resolves a bona fide underlying controversy involving the prize winner, which order shall not include an order issued to enforce or approve an agreement between a prize winner and any third party, where the prize winner has agreed to transfer future prize payments to a third party in exchange for consideration." 16 Tex. Admin. Code § 401.309(b)(2) (2008). Voluntary assignments, in the Commission's view, are governed exclusively by section 466.410.

2

assignment; understands that the assignor will not receive the prize payments . . . for the assigned years"; understands and agrees that the state, the commission, and its personnel shall have no further liability to make the assigned payments to the assignor; has been provided a one-page disclosure statement stating, in boldfaced, 14-point type, the payments being assigned, purchase price, discount rate, and any fees; and that the assignor was advised of the right to cancel the transaction within three days of execution

• the court shall make specific findings regarding compliance with these and other requirements

*Id.* § 466.410(b), (e).

The assignment right under section 466.410 is subject to an additional limitation of significance to this case: "installment prize payments due within the final two years of the prize payment schedule may not be assigned." *Id.* § 466.410(a).

**UCC**

Article 9 of the Texas UCC also addresses the assignability of Texas Lottery prizes. Under the UCC, "accounts" are expressly made assignable, *see* Tex. Bus. & Com. Code Ann. § 9.406(a) (West 2002), and "account" is defined to include "winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state." *Id.* § 9.102(a)(2)(viii) (West Supp. 2007). Furthermore, UCC section 9.406(f) provides, in relevant part:

a rule of law, statute, or regulation that prohibits, restricts, or requires consent of a government, governmental body or official, or account debtor to the assignment or transfer of, creation of a security interest in, an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation:

3

(1) prohibits, restricts, or requires consent of the government, governmental body, or official, or account debtor to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account or chattel paper.

*Id.* § 9.406(f).

## PROCEEDINGS BELOW

Appellees Irvan, First State Bank of DeQueen (FSB), and Stone Street Capital, Inc., filed the underlying action under the Uniform Declaratory Judgments Act.[2] They alleged that after Irvan won his Texas Lottery prize in 1995, he became indebted to FSB for approximately $195,000, plus interest, which he ultimately was unable to pay. Irvan and FSB worked out a "Composition of Creditors" under Arkansas state law. The Composition of Creditors provided that, in full satisfaction of his debt, Irvan would pay to FSB a sum from monies received from the sale of the final two lottery prize installment payments due in 2013 and 2014.[3] Irvan was to sell and assign these payments to Stone Street, which, in turn, would sell and assign the payments to Great-West Life & Annuity. The proposed plan was filed in Arkansas state court, which entered a final order approving the Composition of Creditors. The Arkansas court ordered that Irvan sell and assign the payments to Stone Street and that Stone Street, in turn, sell and assign the payments to Great-West. The final order also stated that it constituted "an appropriate judicial order" under section 466.406(c) of the Texas Government Code and that the Travis County district court shall grant full faith and credit to its order. FSB then filed an authenticated copy of the final Arkansas order in Travis County district

---

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.001-.011 (West 1997 & Supp. 2007).

[3] Apparently Irvan had previously assigned his right to receive prior installment payments.

4

court pursuant to the Uniform Enforcement of Foreign Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 35.001-.008 (West 1997 & Supp. 2007).

Appellees further pled that following the filing and entry of the final order in Travis County, the Commission "advised Plaintiffs that the Commission does not recognize the validity of the Final Order and intends to make the . . . Payments to Plaintiff Irvan, in spite of the Final Order." Appellees alleged that the Commission had contended that Irvan's assignment was prohibited by sections 466.406 and 466.410 of the government code. Appellees sought declarations that (1) the final order of the Arkansas court was, pursuant to the UEFJA, effective as a final order of the Travis County district court; (2) section 9.406(f) of the Texas UCC renders ineffective any provision of the Lottery Act that purports to restrict or prohibit the assignment of lottery winnings; (3) the assignments were valid transfers and Great-West is the sole and lawful owner of the right to receive the 2013 and 2014 payments; and (4) in the alternative, that the final order is "an appropriate judicial order" under section 466.406(c).[4]

Soon thereafter, appellees filed a motion for partial summary judgment on their declaratory-judgment claim that the Texas UCC rendered ineffective the anti-assignment provisions of the lottery act. The Commission filed a response and a plea to the jurisdiction, arguing in the plea that a justiciable controversy existed only as to the effectiveness of government code 466.410 but not as to 466.406(c). The district court granted appellees' motion for partial summary judgment, declaring that "Tex. Bus. & Com. Code §§ 9.406 and 9.102 render ineffective

---

[4] Appellees also sought mandatory injunctive relief compelling the Commission to make the payments to Great-West, as well as attorney's fees.

Tex. Gov't Code §§ 466.406 and 466.410 to the extent that Tex. Gov't Code §§ 466.406 and 466.410 purport to restrict or prohibit the assignment of Texas Lottery prize payments." By separate order, the court also denied the Commission's plea to the jurisdiction. Subsequently, by agreed motion, the district court severed out appellees' UCC claim and rendered a final judgment in that proceeding based on its partial summary judgment ruling. The Commission subsequently filed this appeal.[5]

## ANALYSIS

The Commission brings forward three issues on appeal challenging the district court's judgment that article 9 of the Texas UCC renders ineffective government code sections 466.406 and 466.410 to the extent that they purport to restrict assignments of Texas Lottery prizes.[6] The Commission emphasizes the legislative history of the two sets of provisions. Prior to 1999, the lottery act had prohibited all assignments of prizes. During its 76th regular session that year, the legislature amended section 466.406 to its current form and added section 466.410.[7] During the same session, the legislature adopted revised article 9 of the UCC, including the language in sections

---

[5] The Commission also filed an interlocutory appeal from the district court's order denying its plea to the jurisdiction, but subsequently dismissed that proceeding. *Texas Lottery Comm'n v. First State Bank of DeQueen*, No. 03-07-00290-CV (Tex. App.—Austin Aug. 24, 2007), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/HTMLOpinion.asp?OpinionID=16178.

[6] It briefed but ultimately conceded a fourth issue challenging appellees' standing.

[7] Act of May 30, 1999, 76th Leg., R.S., ch. 1394, §§ 2, 4, 1999 Tex. Gen. Laws 4717, 4717-4718.

9.102 and 9.406 on which appellees rely.[8]  The lottery act amendments were enacted approximately two weeks after the UCC amendments (May 17 versus May 30).  The Commission urges that the legislature could not have intended to enact regulations and restrictions on lottery prize assignments in government code sections 466.406 and 466.410 that would be rendered wholly ineffective by the UCC provisions enacted a few days earlier.  *See Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 86 (Tex. 2006) ("We must presume that the entire statute . . . was intended to be effective."); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998) ("[W]e do not lightly presume that the Legislature may have done a useless act."); Tex. Gov't Code Ann. § 311.021(2) (West 2005) (we presume that "the entire statute is to be effective").  This is especially so, the Commission suggests, because the lottery act amendments were the sole focus of the bill through which they were enacted.  Relatedly, the Commission argues that the policy goals embodied in the lottery act provisions—including consumer-protection elements aimed at preventing "prizewinners [from being] cheated into unfavorable assignments of their lottery prizes without adequate representation"[9]—would be thwarted by what it terms "normal commercial law."

The Commission also invokes the principle that a "more specific" statutory enactment should be read in harmony with "more general" ones and that the former should control in the event of a conflict.  *See Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 411 (Tex. 2007) (giving both statutes effect by treating more specific one as limited exception

---

[8]  Act of May 17, 1999, 76th Leg., R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2639-2640, 2697-2698.

[9]  The Commission also emphasizes other provisions of section 466.410 that address tax issues, *see* Tex. Gov't Code Ann. § 466.410(i)-(j), and what it characterizes as "uncertainty as to the proper payee or the risk of double liability against the State." *See id.* § 466.410(d), (e), (h).

to more general one); Tex. Gov't Code Ann. § 311.026 (West 2005) (if specific and general provision cannot be harmonized, the "special . . . provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail"). In the alternative, the Commission relies on the rule that if two statutes enacted during the same session are irreconcilable, it is the latter-enacted of the two that controls. Tex. Gov't Code Ann. § 311.025(a)-(b) (West 2005).

Appellees respond that the legislature has explicitly specified the means of resolving any inconsistency between UCC article 9 and the anti-assignment provisions of the lottery act—the UCC renders the lottery act ineffective to the extent it purports to limit assignments of lottery prizes. *See* Tex. Bus. & Com. Code Ann. § 9.406(f); *see id.* § 9.102(a)(2)(viii). In the alternative, appellees argue that the UCC provisions were actually the latest enacted, relying on the legislature's re-enactment of section 9.406(f) when amending the provision in 2001. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 705, § 11, 2001 Tex. Gen. Laws 1403, 1405-24 (codified at Tex. Bus. & Com. Code Ann. § 9.406(f)); *see* Tex. Const. art. III, § 36. We agree with appellees that the UCC provisions control over the lottery act's assignment restrictions.

Statutory construction presents a question of law that we review de novo. *E.g.*, *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co.*, 209 S.W.3d at 85. We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d

8

621, 625-626, (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Taylor v. Firemen's and Policemen's Civil Serv. Comm'n of City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)). "When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *Id.* at 626*; see Shumake*, 199 S.W.3d at 284 ("If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids."); *see also Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) (even in face of express legislative intent that recodification be "nonsubstantive," "when . . . specific provisions of a 'nonsubstantive' codification and the code as a whole are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect"). Besides yielding an objective guidepost to the legislature's intent, reliance on statutory text "ensures that ordinary citizens are able to 'rely on the plain language . . . to mean what it says.'" *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 860 (Tex. 2005) (quoting *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999)).

The parties agree that the UCC and the lottery act are inconsistent with regard to whether Irvan's assignment is permitted—the UCC provides that "accounts" (including lottery prizes) are assignable, while the lottery act prohibits assignments of lottery prizes during the last two years in which they are to be paid. But unlike the cases involving overlapping, inconsistent statutes on which the Commission relies, the legislature has clearly and unambiguously provided a means for resolving the inconsistency between the lottery act and the UCC. UCC section 9.406(f) states that:

9

a rule of law, statute, or regulation that prohibits, restricts, or requires consent of a government, governmental body or official, or account debtor to the assignment or transfer of . . . an account [including state lottery prizes] . . . is ineffective to the extent that the rule of law, statute, or regulation: . . . prohibits, restricts, or requires the consent of the government, governmental body, or official, or account debtor to the assignment or transfer of, or the creation, attachment, perfection, or enforcement of a security interest in, the account or chattel paper.

Tex. Bus. & Com. Code Ann. § 9.406(f); *see id.* § 9.102(a)(2)(viii).[10]  We are bound to give this

plain language effect "without resort to rules of construction or extrinsic aids." *See Shumake*, 199

---

[10]  This statutory language is hardly ambiguous, as the dissent contends, unless one thinks that "A trumps B" is.  *See Texas Lottery Comm'n v. First State Bank of DeQueen*, No. 03-07-00249-CV, ___ S.W.3d ___, ___ (Tex. App.—Austin May 16, 2008, no pet. h.) (Patterson, J. dissenting).  Based on such a premise, the dissent dismisses as "largely a fiction here" the principle that we must be faithful to the plain meaning of this statute.  *See id.*  It is true, as the dissent emphasizes, that our construction of a statute's text may be informed by such considerations as "the object sought to be obtained, the circumstances under which the statutes were enacted, the legislative history, and the consequences of a particular construction." Tex. Gov't Code Ann. § 311.023 (West 2005); *see Texas Lottery Comm'n*, No. 03-07-00249-CV, ___ S.W.3d at ___(Patterson, J. dissenting).  This does not mean, however, that we are free to abandon the statutory text in favor of a contrary "construction" derived from these factors. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 860 (Tex. 2005), on which the dissent relies, emphatically rejects that notion:

As we have often explained:

Courts must take statutes as they find them.  More than that, they should be willing to take them as they find them.  They should search out carefully the intendment of a statute, giving full effect to all of its terms.  But they must find its intent in its language, and not elsewhere.  They are not the law-making body.  They are not responsible for omissions in legislation.  They are responsible for a true and fair interpretation of the written law.  It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

Straightforward statutory construction ensures that ordinary citizens are able "to rely on the plain language of a statute to mean what it says."  But when courts "abandon the plain meaning of words, statutory construction rests upon insecure and obscure foundations at best."

*Rubio*, 185 S.W.3d at 860 (internal citations omitted).

10

S.W.3d at 284. That includes resort to the specific-versus-general statutory-construction principle. If that principle is relevant here, however, it would require that UCC section 9.406(f)—which specifically addresses conflicts between article 9 and assignability restrictions under other Texas law—controls over the general standards of the code construction act on which the Commission and the dissent rely. *See* Tex. Gov't Code Ann. § 311.026(b).[11]

We recognize that our construction of the UCC renders the assignment restrictions of government code sections 466.406 and 466.410 entirely ineffective even though those restrictions were the focus of the 1999 amendments and even though that enactment occurred after the UCC amendments that session. "It is certainly true that we do not lightly presume the Legislature may have done a useless act, and will not read statutory language to be pointless if it is reasonably susceptible of another construction." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004). But both of these principles, as the Texas Supreme Court has observed, presume the possibility that the legislature might occasionally do such a thing. *Id.* "It is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." *Id.* While we do not lightly presume such occurrences, we are bound to effectuate the language the legislature has chosen, and that language leaves no room for a construction other than that the UCC article 9 controls over the assignment restrictions of the lottery act or other state law. *See Fleming Foods*, 6 S.W.3d at 286.

---

[11] For similar reasons, comment 3 to UCC section 1.103(b), which addresses the UCC's concepts of supplementation and preemption that govern its general relationship to other bodies of state law, does not aid the dissent. *See Texas Lottery Comm'n,* No. 03-07-00249-CV, ___ S.W.3d at ___(Patterson, J. dissenting); Tex. Bus. & Com. Code Ann. § 1.103(b) & cmts. 2, 3 (West. Supp. 2007). Here, as we have explained, "other interpretative principles addressing the interrelationship between statutes"—i.e., the applicable interpretative principles other than those set forth in UCC section 1.103(b)—require us to construe UCC section 9.406(f) to mean what it plainly says.

The Commission and the dissent urge that our construction thwarts important legislative policy objectives or "social policies" embodied in sections 466.406 and 466.410, including protecting the perceived interests of prize winners. But giving effect to the lottery act's assignment restrictions at the expense of the UCC would also thwart important legislative policy objectives. "The UCC, a uniform code, must be 'liberally construed and applied to promote its underlying purposes and policies' . . . '(1) to simplify, clarify and modernize the law governing commercial transactions; (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and (3) *to make uniform the law among the various jurisdictions*.'" *Southwest Bank v. Information Support Concepts, Inc.*, 149 S.W.3d 104, 110 (Tex. 2003) (quoting Tex. Bus. & Com. Code Ann. § 1.103(a)) (emphasis added); *see also* Tex. Gov't Code Ann. § 311.028 (West 2005) ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."). "Additionally, the UCC is 'carefully integrated and intended as a uniform codification of permanent character covering an entire "field" of law, [and] is to be regarded as particularly resistant to implied repeal.'" *Southwest Bank*, 149 S.W.3d at 111 (quoting Tex. Bus. & Com. Code Ann. § 1.104 cmt. 1); *see also id*. ("'In view of the considered and deliberate manner of preparing and adopting the UCC, it is obvious that a repeal of any of its provisions is not to be lightly assumed to have been intended by the legislature.'") (quoting Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 1-104:3 (3d ed. 2003)). "Given this express goal, we must be careful not to interpret any statute that does not explicitly amend or modify the UCC as doing so impliedly. By adhering to this discipline, we preserve the UCC's purposes and policies." *Id.*

The Commission emphasizes that the legislature did not incorporate into section 9.406 an additional subsection from the model UCC article 9 that would have specifically enumerated any statutes that were not preempted. *See* U.C.C. § 9-406(j) (2000). It also points out that the legislature did not explicitly provide, as some states have, that article 9 preempts future enactments that do not contain language explicitly preempting 9-406. *See* Ala. Code 7-9A-406(j); N.C. Gen. Stat. Ann. § 25-9-406(j); Pa. Cons. Stat. Ann. § 9-406(j). Whether the legislature might have been even more explicit in providing that article 9 of the Texas UCC preempts other laws that purport to restrict assignments of accounts is beside the point—it remains that the legislature did so plainly and unambiguously. We also observe that while some states have included anti-assignment language in their state lottery statutes that explicitly preempt the UCC, the Texas Legislature did not do so. *See Midland States Life Ins. Co. v. Cardillo*, 797 N.E.2d 11, 17-18 (Mass. App. Ct. 2003) (lottery winnings not assignable where state lottery statute explicitly preempted UCC).

Unless and until the legislature instructs us otherwise, we will apply the statutes as currently written as authoritatively reflecting its intent regarding its desired balancing between the policy interests served by the UCC and those served by the lottery act's assignment restrictions. We hold that the district court did not err in holding that sections 9.406 and 9.102 of the Texas UCC render ineffective government code sections 466.406 and 466.410 to the extent the latter purport to restrict or prohibit the assignment of lottery prize payments.

13

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;

  Dissenting Opinion by Justice Patterson

Affirmed

Filed:  May 16, 2008