[No. B202411. Second Dist., Div. Two. June 26, 2008.]

STONE STREET CAPITAL, LLC, Plaintiff and Appellant, v. CALIFORNIA STATE LOTTERY COMMISSION, Defendant and Respondent.

**COUNSEL**

Rodi, Pollock, Pettker, Christian & Pramov and Allan E. Ceran for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Robert L. Mukai, Assistant Attorney General, Sara J. Drake and Randall A. Pinal, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**CHAVEZ, J.**—Stone Street Capital, LLC (appellant), appeals from a final judgment dismissing its action against the California State Lottery Commission (respondent) after the trial court granted respondent's motion for judgment on the pleadings. Appellant sought declaratory relief, contending that respondent was required by law to recognize and accommodate an assignment of the last three years of prize winner Linda Foster's lottery winnings. We reject appellant's position that certain California Uniform Commercial Code provisions invalidate the California State Lottery Act's (Gov. Code, § 8880 et seq.) (Lottery Act) restrictions on assignment, and therefore affirm the judgment.

## CONTENTIONS

Appellant contends that lottery winnings are fully assignable under division 9 of the California Uniform Commercial Code, particularly because the revised definition of "account" in division 9, made operative in 2001, includes "winnings in a lottery or other game of chance." (Cal. U. Com. Code, § 9102, subd. (a)(2)(viii).) Appellant argues that division 9 of the California Uniform Commercial Code controls over conflicting provisions of the Lottery Act, specifically Government Code section 8880.325 (section 8880.325) which directs that "[t]he right of any person to a prize shall not be assignable" except under certain enumerated exceptions. Finally, appellant contends that, even if the more specific provisions of the Lottery Act control, the Lottery Act permits the assignment of the last three years of Linda Foster's lottery prize in this case.

## BACKGROUND

1. *The Lottery Winnings and Arizona Divorce Proceedings*

In May 1996, Linda Foster and her then husband, Dennis Foster, were the winners of a California Lottery jackpot of 20 annual payments of $700,000 payable on or about May 20, 1996, through and including May 20, 2015. The Fosters dissolved their marriage on May 27, 2003, in an action in the Arizona Superior Court, which was amended by a property settlement on November 12, 2003.

On April 14, 2006, Linda Foster entered into a written agreement whereby she sold and assigned to appellant her right, title and interest in the final three jackpot prize payments (assigned payments), payable on May 20, 2013, May

20, 2014, and May 20, 2015.[1] The sale was conditioned upon an unqualified written acknowledgement from respondent that it would make the assigned payments to appellant.

On December 1, 2006, Linda Foster reopened the dissolution proceedings in the Arizona Superior Court to modify the 2003 divorce decree and clarify ownership of the assigned payments. The Mohave County Superior Court, in *In re Marriage of Foster* (Super. Ct. Mohave County, Ariz., 2006, No. DO 2000-4100), found that it was empowered by Arizona law to grant the relief requested and that the circumstances of the case justified relieving Linda and Dennis Foster from operation of the 2003 property settlement. The Mohave County court then ordered that the Fosters' property settlement be modified "to allow Petitioner and/or Petitioner and Respondent jointly to transfer all their right, title, and interest to future payments from the California Lottery to a third party in exchange for a current cash payment and to divide and allocate that payment between them as follows: [¶] To Petitioner, Linda Verne Foster: $387,542.02 [¶] To Respondent, Dennis Paul Foster: $141,630.25."

The Arizona court then directed that "the California Lottery Commission shall transfer all of the Petitioner's right, title, and interest in [the assigned payments] to the designated Assignee." The Arizona court ordered that, "notwithstanding Cal. Gov. Code § 8880.325, this Court's Order shall constitute an 'appropriate judicial order' and the Superior Court for the State of California . . . shall grant this order full faith and credit under Article 4, Section 1 of the United States Constitution and direct the California Lottery Commission to comply with the provisions of this order and the relief requested." The Arizona court then ordered that the California Lottery Commission, which was not a party to the action, "send to the parties . . . written acknowledgement of this Court Order and of the Commission's intent to rely thereon in making the payments to the Assignee."

On January 9, 2007, the Sacramento County Superior Court, in *Foster v. Foster* (Super. Ct. Sac. County, 2007, No. 07AS00075) (Sacramento judgment), entered the Arizona judgment as a foreign judgment and directed that it be given full faith and credit to the maximum extent allowed under federal and state law.[2] Appellant served respondent with the Sacramento judgment on

---

[1] The agreement was between Linda Foster and Stone Street Capital, Inc. On March 1, 2007, Stone Street Capital, Inc., assigned to appellant all of its assets and liabilities, including the assets and liabilities from which this dispute has arisen. Both Stone Street Capital, Inc., and appellant are referred to as appellant.

[2] Respondent asked that we take judicial notice of the stipulated judgment filed in *Foster v. Foster, supra*, No. 07AS00075, filed January 9, 2007, which attaches a copy of the Arizona court's order in *In re the Marriage of Linda Verne Foster and Dennis Paul Foster*, in the

January 22, 2007. On January 26, 2007, respondent refused to acknowledge the assignment of the assigned payments.

## 2. *The Trial Court Proceedings*

On March 19, 2007, appellant commenced this action with the filing of a complaint for declaratory relief. On April 19, 2007, respondent demurred to the complaint. Appellant opposed the demurrer, respondent replied, and the matter was set for a hearing on June 6, 2007. At the hearing, the trial court found that the action could likely be resolved on the issues of statutory interpretation submitted by the parties, and decided to treat the demurrer as a motion for judgment on the pleadings. It set a briefing schedule and a new hearing date.

The parties filed supplemental briefs and a hearing was held on August 10, 2007. The court issued a written ruling finding that the clear and unambiguous language of section 8880.325, subdivision (b) did not render the Arizona judgment to be an "appropriate judicial order" under that section. Thus, the trial court found, the "statutory provision allowing assignment of the final three payments of lottery winnings, therefore, does not apply in this case." The court further found that "[t]he Arizona marital judgment requiring the assignment of the Fosters' lottery winnings is not entitled to full faith and credit in California because the Arizona court clearly lacked jurisdiction over the Lottery, but nonetheless ordered an assignment that required the Lottery to perform certain tasks . . . . The Lottery did not receive notice of the Arizona proceedings, nor was the issue of the Arizona court's jurisdiction over the lottery raised or litigated in the Arizona proceeding." Finally, the court determined that there is no "express indication in the plain language of the Commercial Code section 9102, subdivision (a)(2) or 9406, subdivision (f) that the Legislature intended those provisions to repeal the specific Lottery Act provisions of Government Code section 8880.325. [¶] . . . [¶] Given the express legislative intention and clear statutory language supporting the Lottery Act's restriction on the assignment of the final three prize payments, it is not irreconcilable, clearly not repugnant, to construe these statutes to allow an exception to the Commercial Code's assignment provisions applying to only the final three payments of lottery winnings." For those reasons, the court granted respondent's motion for judgment on the pleadings.

On September 12, 2007, the trial court entered judgment in favor of respondent. On September 14, 2007, respondent served by mail upon appellant notice of entry of judgment. On September 20, 2007, appellant timely filed its notice of appeal from the judgment.

superior court of the State of Arizona in and for the County of Mohave, case No. DO 2000-4100, filed December 1, 2006. We granted respondent's request.

## DISCUSSION

### I. *Standard of Review*

A trial court's judgment on an order granting a motion for judgment on the pleadings is reviewed de novo. (*Gerawan Farming v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) On appeal from a judgment on the pleadings, the court assumes the truth of, and liberally construes, all properly pleaded factual allegations in the complaint. (*Id.* at pp. 515–516.) The court may also consider evidence outside of the pleadings that was considered by the trial court without objection (*O'Neil v. General Sec. Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712]), and it may consider matters subject to judicial notice. (*Harris v. Grimes* (2002) 104 Cal.App.4th 180, 185 [127 Cal.Rptr.2d 791].)

Because we review the trial court's decision de novo, we do not defer to the trial court's ruling or reasons for its ruling. Instead, we decide the matter anew. (*Jenkins v. T&N PLC* (1996) 45 Cal.App.4th 1224, 1227 [53 Cal.Rptr.2d 642].)

### II. *The Lottery Act Governs the Assignment at Issue*

Appellant's main argument is that California's Uniform Commercial Code section 9406, subdivision (f) (section 9406(f)) permits Linda Foster to assign her final three lottery payments, notwithstanding specific provisions of the Lottery Act to the contrary.

Section 9406(f) provides that:

"(f) Except as otherwise provided in Sections 9407 and 10303, and subject to subdivisions (h) and (i), a rule of law, statute, or regulation, that prohibits, restricts, or requires the consent of a government, governmental body or official, or account debtor to the assignment or transfer of, or creation of a security interest in, an account or chattel paper is ineffective to the extent that the rule of law, statute, or regulation does either of the following:

"(1) Prohibits, restricts, or requires the consent of the government, governmental body or official, or account debtor to the assignment or transfer of . . . the account or chattel paper."

Appellant argues that this prohibition on the legal restriction of assignments applies to lottery winnings because the definition of "account" in division 9 of the California Uniform Commercial Code, made operative in 2001, specifically includes "winnings in a lottery or other game of chance

operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state." (Cal. U. Com. Code, § 9102, subd. (a)(2)(viii).)

■ The relevant Lottery Act provision, section 8880.325, begins with the proposition that "The right of any person to a prize shall not be assignable, except that the payment of any prize may be assigned, in whole or in part, as provided by Section 8880.326 and this section under any of the following circumstances . . . ."[3] Therefore, all assignments are prohibited unless specifically permitted by section 8880.325.[4]

Section 8880.325, subdivision (c), permits assignment to secure a loan. Section 8880.325, subdivision (d), outlines procedures for assignment of future prize payments to another person designated pursuant to an appropriate judicial order of a California superior court or federal court having jurisdiction over property located within California. Despite the exceptions provided in subdivisions (c) and (d), section 8880.325, subdivision (h) prohibits voluntary assignment of the final three lottery prize payments. Section 8880.325, subdivision (h), provides in full: "(h) Notwithstanding any other provision of law, by entering into an agreement to assign any prize payments pursuant to subdivision (c) or (d), a prizewinner shall be deemed to have waived any statutory period of limitation as to the State of California enforcing any rights against annual prize payments due after the last assigned payment is paid or released, if assigned as collateral, from the lien granted the secured creditor. No assignment of prize payments pursuant to either subdivision (c) or (d) shall be valid or allowed for the final three annual prize payments from the lottery to the prizewinner."

■ Section 8880.325 conflicts with the provisions of the California Uniform Commercial Code quoted above, which proscribe statutory prohibition of the assignment of commercial accounts and broadly define such accounts to include lottery winnings.

---

[3] Government Code section 8880.326 governs distribution of prize payments to prizewinners upon the prizewinner's death.

[4] Respondent has directed us to the legislative history of the Lottery Act for insight into the Legislature's rationale for severely restricting a prizewinner's rights to assignment of the prize winnings. Specifically, the Assembly Committee on Governmental Organization made the following observation about the 1994 amendments to the Lottery Act, which added the statutory prohibition on assignment of the final three prize payments: "There are fears that prize winners will be taken advantage of by unscrupulous companies offering an immediate cash payout in exchange for assignment of a prize. Presumably, a court in approving any assignment allowed by this legislation would review the relevant issues of the proposed assignment to determine that the interests of the parties are protected . . . ." (Assem. Com. on Governmental Organization, Concurrence in Senate Amendments, Analysis of Assem. Bill No. 3542 (1993–1994 Reg. Sess.) Sept. 1, 1994, p. 2.) We granted respondent's request for judicial notice of these amendments and other relevant legislative materials.

### A. *Constitutional question*

Respondent argues that, if section 9406(f) is determined to supersede the Lottery Act, it is unconstitutional. In enacting the Lottery Act by initiative measure, respondent explains, the people of the State of California declared the Lottery Act could not be amended except to further its purpose of providing funding for education.[5] A reading of section 9406(f) which alters the Lottery Act would constitute an amendment to the Lottery Act. Without a specific Legislative finding that such amendment furthers the purpose of the Lottery Act, respondent argues, such an amendment is unconstitutional.

■ California law requires that we avoid pronouncing upon the constitutionality of a statute unless such a pronouncement is absolutely necessary. The Supreme Court has explained that " '[i]t is a well-established principle' " that courts " 'will not decide constitutional questions where other grounds are available and dispositive of the issues of the case.' " (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 66 [195 P.2d 1], quoting *Hurd v. Hodge* (1948) 334 U.S. 24, 30, fn. 6 [92 L.Ed. 1187, 68 S.Ct. 847].) This is such a case. As set forth below, we find that the application of California law governing the interpretation of conflicting statutes compels the conclusion that the provisions of the Lottery Act must prevail over the conflicting provisions of section 9406(f). Therefore we shall not reach the constitutional question presented by respondent.

### B. *The specific provisions of the Lottery Act control over the general provisions of the California Uniform Commercial Code*

■ If two seemingly inconsistent statutes conflict, the court's role is to harmonize the law. (*People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420] ["[W]e do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]"]; *Chatsky & Associates v. Superior Court* (2004) 117 Cal.App.4th 873, 876 [12 Cal.Rptr.3d 154] ["Where, as here, we are called upon to interpret two seemingly inconsistent statutes to determine which applies under a particular set of facts, our goal is to harmonize the law [citation] and avoid an interpretation that requires one statute to be ignored. [Citation.]"].) We presume that the Legislature, when enacting a statute, was aware of existing related laws and intended to maintain a consistent body of rules. (*People v. Vessell* (1995) 36 Cal.App.4th 285, 289 [42 Cal.Rptr.2d 241].)

---

[5] The Lottery Act was enacted by an initiative measure, commonly known as Proposition 37, in 1984. Appellant has asked that we take judicial notice of portions of the California ballot pamphlet for the General Election of November 6, 1984. We granted appellant's request.

If inconsistent statutes cannot otherwise be reconciled, "a particular or specific provision will take precedence over a conflicting general provision." (*People v. Vessell, supra*, 36 Cal.App.4th at p. 289, citing Code Civ. Proc., § 1859 ["In the construction of a statute . . . when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."]; see also Civ. Code, § 3534 ["Particular expressions qualify those which are general."].) The Supreme Court has confirmed, " 'where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. [Citations.]' " (*People v. Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)

We find that these principles of statutory interpretation apply to the situation before us. The California Uniform Commercial Code provisions cited by appellant are general rules that exist to make various commercial practices uniform. (Cal. U. Com. Code, §§ 1103, subd. (a)(3), 1104.) The California Uniform Commercial Code broadly defines "account" to include at least eight categories of commercial transactions, only one of which is generally described as lottery winnings in any state, and contains a blanket rule that declares ineffective any statute that prohibits the assignment of accounts. Section 8880.325, in contrast, is part of a special act dealing with a single subject: the California State Lottery. It specifically prohibits a prize-winner from assigning away his or her rights and interests in a lottery prize, unless certain specific exceptions apply.

In addition, a conclusion that section 9406(f) trumps section 8880.325 would render section 8880.325 entirely ineffective. Such an interpretation of the law would create an implied repeal of section 8880.325. California disfavors the implied repeal of statutes, and California law carries a strong presumption against any interpretation of two conflicting statutes which effectively repeals one of the statutes. In fact, " ' "[t]he presumption against implied repeal is so strong that, 'To overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' " ' [Citation.]" (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)

In this case, we can resolve the conflict between the statutes in a way that allows both statutes to operate concurrently. Under *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra*, 17 Cal.4th at page 569, we are thus bound to permit the two statutes to "stand together." We follow the rule that dictates

that a specific provision prevails over a general provision, and interpret section 8880.325 as an exception to the general rule found in section 9406(f). We therefore find that section 8880.325's specific provisions prohibiting the assignment of prize payments control in this situation. We address appellant's arguments to the contrary below.

### C. The Legislature did not express a specific intent to override the Lottery Act

Appellant argues that, in enacting section 9406(f), the Legislature contemplated that there may be laws, statutes, or regulations that prohibit the assignment of "accounts" and issued a blanket rule rendering "ineffective" all such laws. Appellant compares section 9406(f) to the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), which specifically provides that "where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail." (Civ. Code, § 1790.3; see also Gov. Code, § 53312 ["Any provision in this chapter which conflicts with any other provision of law shall prevail over the other provision of law."]; Gov. Code, § 4529.18 ["If any act of the Legislature conflicts with the provisions of this act, this act shall prevail."].)

No comparable language exists in the California Uniform Commercial Code specifically declaring that the California Uniform Commercial Code "shall prevail" over the Lottery Act or any other conflicting legislation.[6] Instead, as we have discussed above, the California Uniform Commercial Code merely provides a general rule against statutory prohibitions on the assignment of accounts. The Legislature is presumed to know the law regarding the dominance of specific laws over general laws. (*Loken v. Century 21-Award Properties* (1995) 36 Cal.App.4th 263, 272 [42 Cal.Rptr.2d 683] [" 'the Legislature is presumed to be aware not only of the general laws which it has enacted . . . , but also of the judicial decisions interpreting those laws . . . .' [Citation.]"].) As the Civil Code section and Government Code

---

[6] Respondent points out that, in contrast to the California Uniform Commercial Code, section 8880.325, subdivision (h) contains deliberate language indicating that it prevails over conflicting provisions, opening with the phrase "Notwithstanding any other provision of law." We agree with respondent's interpretation of the phrase as applying to the entire subdivision, including its specific prohibition on the assignment of the last three years of lottery prize payments. "The phrase '[n]otwithstanding any other provision of law' is a very comprehensive phrase. This phrase signals a broad application overriding all other code sections unless it is specifically modified by use of a term applying it only to a particular code section or phrase. [Citation.]" (*In re Marriage of Cutler* (2000) 79 Cal.App.4th 460, 475 [94 Cal.Rptr.2d 156].) However, our decision that section 8880.325 prevails over the conflicting California Uniform Commercial Code provision does not rest upon the Legislature's use of this phrase in section 8880.325, subdivision (h).

sections quoted above illustrate, the Legislature knows how to write definitive language indicating one statute's specific control over another. It did not do so in drafting division 9 of the California Uniform Commercial Code.[7]

### D. *The out-of-state decisions cited by appellant are not persuasive*

Appellant asks that we take note that "courts in the states of Texas, Kentucky, Missouri, and Indiana each have entered judgments finding that the provisions of the UCC invalidate prior statutory restraints on the assignment of lottery prizes."[8] We are not persuaded by these judgments. Appellant provides no analysis equating the laws at issue in those states with the California laws in question; nor does appellant provide any analysis showing that those states follow the same rules of statutory construction as we follow in California. The Texas order consists of three sentences, with no analysis or background. The Kentucky court found that the Uniform Commercial Code impliedly repealed the state lottery act because the Uniform Commercial Code was enacted later in time. As set forth above, the rule in California is that a specific statute controls over a general statute, regardless of which statute was passed earlier. (*People v. Gilbert, supra*, 1 Cal.3d at p. 479.) The Missouri and Indiana orders are not helpful because the state lotteries of both states conceded that the Uniform Commercial Code rendered ineffective their respective lottery laws, thus precluding a contested judicial determination on the matter. However, even if these cases had provided an independent judicial

---

[7] Appellant also points out that the California Uniform Commercial Code contains a "no implied repeal provision" (Cal. U. Com. Code, § 1104), which prevents any subsequent legislation from causing an implied change to the code. Section 1104 provides: "This code being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided." This provision provides no support for appellant's argument that section 9406(f) trumps section 8880.325. First, it confirms the California Uniform Commercial Code's standing as a "general act." Second, it applies only to subsequent legislation. As appellant admits, section 8880.325 was enacted before section 9406(f).

[8] Appellant directs us to a request for judicial notice filed in the superior court attaching (1) an "Order Granting Partial Summary Judgment in the action entitled First State Bank of Dequeen, et al. v. Texas Lottery Commission, District Court of Travis County, Texas, 53rd Judicial District, Cause No. D-1-GN-06-004663"; (2) "Opinion and Order granting summary judgment in favor of Stone Street Capital, Inc. and denying summary judgment in favor of Kentucky Lottery Corporation et al. in an action entitled Stone Street Capital, Inc. v. Kentucky Lottery Corporation, et al., Jefferson (Kentucky) Circuit Court, Division Five, Case No. 05-CI-05747"; (3) "Judgment and Order in the action entitled Stone Street Capital, Inc., et al. v. Missouri Lottery Commission, et al., Circuit Court in the County of Cole, State of Missouri, Case No. 06AC-CC00969"; and (4) "Agreed Findings and Order in the action entitled Stone Street Capital, Inc., et al. v. Indiana State Lottery Commission, etc., et al., Marion County (Indiana) Superior Court, Cause No. 49D03-0607-PL-030514." While these orders are not published, appellant cites *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 [16 Cal.Rptr.3d 25] for the proposition that the rule against citing unpublished cases applies only to opinions originating in California. Appellant concedes that these orders are merely persuasive authority and are not binding on this court. (*Ibid.*)

determination of the matter, as stated above, they are unpersuasive without a detailed discussion of the similarities of the state laws at issue, as well as the similarities of those states' principles regarding statutory construction and legislative repeal.[9]

Appellant discusses in detail the Massachusetts decision *Midland States Life Insurance Co. v. Cardillo* (2003) 59 Mass.App.Ct. 531 [797 N.E.2d 11]. While the Massachusetts court rejected the plaintiff's argument that the amendments to article 9 of the Massachusetts Uniform Commercial Code to include lottery proceeds in the definition of "account" demonstrated that the Massachusetts legislature intended to repeal the lottery statute's prohibition against assignments, appellant argues that the case nevertheless supports its position. This is because, as the Massachusetts court pointed out: "The UCC legislation also included an amendment to the Commonwealth's lottery statute . . . providing that the lottery statute prevails over [the Uniform Commercial Code], thus leaving intact the Lottery's proscription of assignments. . . . [¶] The net result of the 2001 UCC amendments is that, while the role of lottery proceeds in commerce is now explicitly recognized in art. nine, the Legislature has excepted the Massachusetts lottery from these changes." (*Midland States, supra*, 797 N.E.2d at p. 18.)

The Massachusetts Legislature's decision to specifically exempt its prohibition on assignment of lottery proceeds from article 9 does not change the outcome here. The California Legislature did not need to create an exemption because, as discussed above, the law of California provides that a specific statute, such as section 8880.325, trumps a more general statute, such as section 9406(f). In addition, California's strong policy against implied repeal provides the California Legislature with assurance that its specific conflicting provisions will be harmonized wherever possible.

---

[9] Appellant has advised us of the recent decision of the Court of Appeals of Texas captioned *Texas Lottery Comm'n v. First State Bank of DeQueen* (2008) 254 S.W.3d 677, filed on May 16, 2008. In that decision, the Texas appellate court affirmed the decision of the district court of Travis County holding that the Texas Uniform Commercial Code controls over the Texas Lottery Act, thus permitting a prizewinner's assignment of his final two prize payments. While appellant submits that "The Texas UCC and Lottery Act provisions under review in that case are almost identical to their California counterparts at issue here," we decline to follow the reasoning of the Texas court. The Texas court's decision was the result of a "plain meaning" analysis of the Uniform Commercial Code, which the court found "clearly and unambiguously provided a means for resolving the inconsistency between the lottery act and the UCC." (*Texas Lottery Comm'n, supra*, 254 S.W.3d at p. 683.) The Texas court concluded that it must give the plain language of the Uniform Commercial Code effect without resort to rules of construction or extrinsic aids. (*Texas Lottery Comm'n*, at pp. 683–684.) As set forth in detail in part II.A. above, California law requires that, in analyzing conflicting statutes, we harmonize the laws whenever possible and prevent implied repeal unless the two statutes are "irreconcilable" or "clearly repugnant." (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra*, 17 Cal.4th at p. 569.) We are bound to follow this California precedent, therefore we are not persuaded by the different approach taken in Texas.

### E. The date of enactment of the California Uniform Commercial Code provision is not determinative

Appellant puts great emphasis on the principle of statutory interpretation which provides that when two acts governing the same subject matter cannot be reconciled, the later-enacted statute will prevail over the earlier-enacted statute.[10]

In support of its position that this principle alone should guide us, appellant cites several cases. None supports appellant's contention that the timing of the enactment of the statutes is determinative in this matter.

The first case cited by appellant is *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449] (*Fuentes*). At issue was a conflict between Labor Code section 4658, which sets forth the general permanent disability benefit provisions, and Labor Code section 4750, which required that compensation for a subsequent injury be computed as though no prior disability or impairment had existed. The court began its discussion of this apparent conflict with a notation that the argument presented by the petitioner would "require [the court] to discern an intent on the part of the Legislature that the 1971 amendments to section 4658 function so as to effect a repeal or at least a partial repeal of section 4750." (16 Cal.3d at pp. 6–7.) The court stated clearly: "Repeals by implication are not favored, and are recognized only when there is no rational basis for harmonizing two potentially conflicting laws. [Citation.]" (*Id.* at p. 7.) While the *Fuentes* court noted the general rule "giving precedence to the later statute," it emphasized that that rule "is invoked only if the two cannot be harmonized." (*Ibid.*) The court then concluded that section 4658 was a general provision establishing the amount of compensation benefits, while section 4750 "may be viewed as a specific rule limiting the benefits available." (16 Cal.3d at p. 7.) Thus, the high court harmonized the two statutes under the rule that the specific governs over the general before resorting to the question of which statute was enacted more recently.

Next, appellant discusses in detail the decision in *Directors Guild of America v. Harmony Pictures* (C.D.Cal. 1998) 32 F.Supp.2d 1184 (*Directors Guild*).[11] The case involved a check from an employer to a pension and

---

[10] Respondent argues that because appellant did not raise this argument below, appellant has forfeited its right to make this argument on appeal. However, "a change in theory is permitted on appeal when 'a question of law only is presented on the facts appearing in the record.' [Citations.]" (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) Therefore we address the merits of this argument.

[11] We note that lower federal decisional authority is neither binding nor controlling in matters involving state law. (*Miller v. Collectors Universe, Inc.* (2008) 159 Cal.App.4th 988,

health fund which contained the notation: " 'Full and final settlement for the audit period 6/1/90 to 5/31/94.' " (*Id.* at 1187.) The fund struck out the notation and deposited the check into its account. (*Ibid.*) The employer contended that the fund's acceptance of the check constituted a full and final settlement of the dispute pursuant to California Commercial Code section 3311. The fund disagreed, relying on California Civil Code section 1526. In that case, noting that it should "avoid determining that the Legislature impliedly repealed Civil Code section 1526 when it subsequently enacted Commercial Code section 3311," the court unsuccessfully attempted to reconcile the two statutes. Only after determining that the two were irreconcilable did the court resort to the rule giving effect to the later-enacted statute. (32 F.Supp.2d at pp. 1190–1192.) Here, as discussed above, the two statutes at issue are reconcilable because the California Uniform Commercial Code provision is a broad statute applying to commercial accounts in numerous situations, while section 8880.325 provides authority in one narrow category: the assignment of California State Lottery prizes.

None of the other cases cited by appellant persuades us that we should resort to the question of timing in this matter. (See *L.A. Police Protective League v. City of L.A.* (1994) 27 Cal.App.4th 168, 179 [32 Cal.Rptr.2d 574] [finding that Gov. Code, § 995.8 must prevail over Lab. Code, § 2802 because "Government Code section 995.8 is more recent *and more particular* than Labor Code section 2802." (Italics added.)]; *Woolridge v. J.F.L. Elec.* (2002) 96 Cal.App.4th Supp. 52 [117 Cal.Rptr.2d 771] [involving the same statutes at issue in *Directors Guild, supra,* 32 F.Supp.2d at p. 1184, and determining that the two statutes conflicted and could not be harmonized, thus finding that the more recently enacted statute controlled]; *Cal. Corr. Peace Officers Ass'n v. Dep't. of Corr.* (1999) 72 Cal.App.4th 1331, 1337 [85 Cal.Rptr.2d 797] [discussing a conflict between Pen. Code, §§ 12021 and 12021.1, and concluding that there was " 'an irreconcilable conflict between the amendment and . . . the old statute that has been preserved and republished in the revision, so that no effect can be given to one without destroying the operation of the other . . . [therefore] full effect is to be given to the amendment and the re-enactment of the conflicting portions of the original act treated as a mistake.' [Citations.]"]; *Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 160–161 [208 Cal.Rptr. 428] [noting that "the rule giving precedence to the more recently enacted statute is invoked only if the two cannot be harmonized"].)

█   The cases discussed above all support our finding that the California Uniform Commercial Code can and should be harmonized with section 8880.325. Because the two statutes can be harmonized with an interpretation

1001, fn. 10 [72 Cal.Rptr.3d 194]; *JPI Westcoast Construction, L.P. v. RJS & Associates, Inc.* (2007) 156 Cal.App.4th 1448, 1465, fn. 2 [68 Cal.Rptr.3d 91].)

of section 8880.325 as providing a specific exception to the broad provisions of the California Uniform Commercial Code, we need not resort to a finding that the later-enacted provisions of the California Uniform Commercial Code constituted an implied repeal of section 8880.325.

III.  *The Lottery Act Does Not Permit Assignment Under These Circumstances*

We have found that section 8880.325 controls the subject matter before us. However, appellant contends that even if the Lottery Act does provide the controlling authority in this matter, appellant is still entitled to declaratory relief because the Lottery Act permits the assignment at issue. We discuss appellant's arguments below, and conclude that the Lottery Act does not permit the assignment at issue.

Appellant first argues that section 8880.325, subdivision (h) is irrelevant in this matter. Section 8880.325, subdivision (h), provides that "[n]o assignment of prize payments pursuant to either subdivision (c) or (d) shall be valid or allowed for the final three annual prize payments from the lottery to the prizewinner." Subdivision (c) relates only to assignments as collateral to secure a loan in accordance with the California Uniform Commercial Code, therefore it is inapplicable. Subdivision (d), however, permits voluntary assignments, such as the one alleged here, provided that certain criteria are met. Appellant argues that the assignment at issue was not a voluntary assignment, therefore subdivision (d) is inapplicable.

On appeal from a judgment on the pleadings, the court assumes the truth of, and liberally construes, all properly pleaded factual allegations in the complaint. (*Gerawan Farming v. Lyons, supra*, 24 Cal.4th at pp. 515–516.) Appellant's complaint alleges that Linda Foster and Dennis Foster dissolved their marriage on May 27, 2003, and that their property settlement was finalized on November 12, 2003. The complaint further alleges that "On April 14, 2006, Stone Street and Linda Foster entered into a written Sale Agreement for Lottery Prize Payments." Subsequently, Linda Foster petitioned the Arizona court to reopen the dissolution proceedings, and the Arizona court complied on December 1, 2006. Thus, the complaint alleges a voluntary assignment agreement, entered into without a court order, over two years after the 2003 marital settlement was finalized and over six months before the dissolution proceedings were reopened.

We therefore find that appellant's position that the assignment was an involuntary assignment, made "in the context" of a marital dispute, is belied by appellant's own allegations and judicially noticed facts regarding the Arizona judgment. However, we note that appellant did object at the hearing

on the motion for judgment on the pleadings that the question of whether the assignment was voluntary or involuntary was a factual issue which was "beyond the scope of [a] motion on the pleadings." Appellant thus raised a factual dispute as to whether the assignment was voluntary and requested that appellant be allowed to "re-plead . . . to allege it was an involuntary court order."

We need not address the alleged "factual question" of whether or not the assignment was a voluntary assignment under section 8880.325, subdivision (d), because, regardless of whether subdivision (h)'s specific ban on assignment of the last three years of prize payments applies, appellant has failed to raise any specific applicable exception to section 8880.325's general prohibition on assignment of lottery prizes.

We reiterate that section 8880.325 begins with the declaration that "The right of any person to a prize shall not be assignable" unless such right was assigned "as provided by Section 8880.326" or under the specifically enumerated circumstances contained within section 8880.325. Appellant contends that the exception relevant to this case is found in section 8880.325, subdivision (b). That subdivision provides that the payment of any prize may be assigned pursuant to "An appropriate judicial order appointing a conservator or a guardian for the protection of the prizewinner or for adjudicating rights to, or ownership of, the prize."

■ If statutory language is not ambiguous, we presume that the Legislature meant what it said and apply the plain meaning of the statute. (*In re Marquez* (2003) 30 Cal.4th 14, 20 [131 Cal.Rptr.2d 911, 65 P.3d 403].) ■ The plain language of section 8880.325, subdivision (b), reveals an exception to the prohibition on assignment where there is an appointment of a conservator or guardian for one of two purposes: (1) for the protection of the prizewinner; or (2) for the purpose of adjudicating rights to, or ownership of, the prize. This language is unambiguous, therefore we need not resort to extrinsic aids or the rules of statutory construction in determining its meaning. (*In re Marquez*, at p. 20.) We find section 8880.325, subdivision (b) to be inapplicable in this case because there is no "judicial order appointing a conservator or a guardian."

Appellant asks that we read the statute to permit assignments made pursuant to "an appropriate judicial order . . . adjudicating rights to, or ownership of, the prize." This interpretation would require us to ignore the word "for" the second time it is used. The word "for," used in the final clause of the subdivision, ensures that we read the statute as describing the two purposes for which the conservator or guardian may properly have been appointed: first, *for* the protection of the prizewinner; or second, *for* adjudicating rights to, or ownership of, the prize. We may not "broaden or narrow

the scope of the provision by reading into it language that does not appear in it or reading out of it language that does." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545 [67 Cal.Rptr.3d 330, 169 P.3d 559].)

Further, appellant's argument that this interpretation results in an absurdity because "[a] conservator does not adjudicate rights, nor does a guardian" is not well taken. A guardian or conservator may properly be appointed in order to represent a prizewinner in a judicial or administrative proceeding in the event that the prizewinner is incompetent to represent his or her own interests. (See, e.g., Code Civ. Proc., § 372.) Thus, the statute represents a legislative intent to create an exception to the bar on assignment where it has been judicially determined that the prizewinner is unable to competently represent his or her interests in the prize.

Finally, appellant claims that "as a matter of practice, the Lottery has consistently interpreted the appropriate court order language to refer to judicial orders made in disputes over ownership rights to lottery prizes." Respondent concedes that such regulations were contradictory to the statute's plain language and exceeded respondent's authority. (*Helene Curtis v. Assessment Appeals Bd.* (1999) 76 Cal.App.4th 124, 129 [90 Cal.Rptr.2d 31], citing *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323] ["Administrative regulations that alter or amend the statute or enlarge or impair its scope are void, and it is the court's obligation to strike down such regulations."].) Moreover, respondent has since revised those regulations to make them consistent with the language of section 8880.325, subdivision (b).[12]

Section 8880.325, subdivision (b) does not permit assignment under the circumstances. Appellant has not pointed to any other exception which would permit the assignment at issue, therefore we find that none exists. We conclude that section 8880.325 does not permit the assignment, and the judgment in favor of respondent should be affirmed.

---

[12] Appellant also attempts to rely on respondent's interpretation of former section 8880.32, subdivision (g), which provided that lottery prize payments could be assigned "to a person designated pursuant to an appropriate judicial order." (See *R & P Capital Res. v. Cal. State Lottery* (1995) 31 Cal.App.4th 1033 [37 Cal.Rptr.2d 436].) The Lottery Act was amended in 1995 to add current section 8880.325, subdivision (b), establishing the standard that an "appropriate judicial order" is one that "appoint[s] a conservator or guardian for the protection of the prizewinner or for adjudicating rights to, or ownership of, the prize." (Stats. 1995, ch. 363, § 3, p. 1903, adding Gov. Code, § 8880.325, subd. (b).) Respondent's interpretations of the previous statutory language are irrelevant.

## DISPOSITION

The judgment is affirmed. Appellant shall pay the costs of appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.