Filed 2/27/14  Duston v. Metropolitan Life Ins. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WENDY DUSTON, et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B245453<br><br>(Los Angeles County<br>Super. Ct. No. BC473132) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa Sanchez-Gordon, Judge.  Affirmed.

The Arkin Law Firm and Sharon J. Arkin; Shernoff Bidart Echeverria Bentley, William M. Shernoff and Travis M. Corby for Plaintiffs and Appellants.

Barger & Wolen, Royal F. Oakes, Michael A.S. Newman and James C. Castle for Defendant and Respondent.

_____

Wendy Duston and her two sons, Zachary Morrison and Joel Morrison (individually referred to by their first names, collectively as plaintiffs), appeal from the judgment entered against them after the trial court granted the motion of defendant Metropolitan Life Insurance, a New York corporation (hereinafter referred to as MetLife) for judgment on the pleadings. We affirm the judgment.

## FACTUAL & PROCEDURAL BACKGROUND

*Summary of Facts*

Wendy was married to Peter Morrison, the father of Zachary and Joel. Peter owned a $2.38 million insurance policy on his own life issued by MetLife, which named Wendy, Zachary and Joel as beneficiaries (the Policy). Wendy filed a petition for marital dissolution in August 1997. At that time Zachary and Joel were adults. During the course of the proceedings, in June 1999, Wendy's counsel sent MetLife a notice pursuant to Family Code section 2050, notifying it that the Policy was the subject of community property claims in the dissolution proceedings.[1]

In July 1999, Wendy's lawyer sent MetLife a follow-up letter which stated, inter alia, "As you know, this office served MetLife with a Notice to Insurance Carriers which was received by you in the above entitled matter on June 7, 1999. [¶] Please be advised that, on behalf of Wendy J. Morrison, MetLife is authorized to reduce the coverage amount on the life of Peter Morrison to a minimum of $1,530,000 on policy number 0098049-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-0. [¶] Any excess premium on other cash value resulting from the reduction in coverage must be retained as part of the cash value and must not be distributed without written authorization from Ms. Morrison. [¶] As a courtesy, I am sending a copy of this letter by facsimile to Patricia Chase to whom I understand Mr. Morrison's initial reduction request was transmitted."

In December 1999, a judgment of marital dissolution was entered.

---

[1]     The text of the letter and the specific language of the statute will be discussed, *infra*.

The Judgment, which was 22 pages, provided, inter alia, that Peter was to maintain a $1.3 million life insurance policy for a period of 20 years naming the plaintiffs as the beneficiaries in the following amounts: Wendy $300,000, Zach $500,000, and Joel $500,000.  It also provided that Peter was to cause the insurance company to notify Wendy in the event the policy lapsed for any reason and authorized Wendy to obtain information from the insurance company about the Policy.  It stated that if Peter did not comply with the terms, that Wendy would have a claim against the estate.

MetLife received a copy of the Judgment.

Peter died on October 8, 2010.  Plaintiffs submitted a claim under the Policy and MetLife informed them that Peter had surrendered the policy sometime in 2000 and it was no longer in effect.  There were no assets left in Peter's estate.

In November 2011, plaintiffs filed a complaint against MetLife, alleging (1) breach of the duty of good faith and fair dealing, (2) breach of contract, and (3) negligence.

MetLife moved for judgment on the pleadings.  The hearing on the motion was held on August 22, 2012.  The court heard argument and took the matter under submission.  On October 3, 2012, the court issued its order granting the motion for judgment on the pleadings.

The court's order stated, inter alia: "The divorce Court's order created no contractual duty between MetLife and Plaintiffs.  It did not purport to do so, and could not do so even if it had so purported.  Nothing in the Court order could create a contractual relationship between MetLife and Plaintiffs where none existed.  [Citation.]  Furthermore, the Court did not purport to create such a contract.  In fact, the Court did not order MetLife to do anything.  It ordered *Peter* to do certain things, and gave Plaintiffs recourse against *Peter's* estate (but not against MetLife) in the event he failed to do such things.  The fact his estate turned out to contain insufficient funds to compensate Plaintiffs for his actions does not create a theory of recovery against MetLife, which was in no way bound by the divorce Court's order. . . .  Section 2051 does not, by its plain language, impose any positive duty on the recipient.  All it does is prescribe *the*

3

***text of a letter to be sent to an insurer*** . . . .  For these reasons, Plaintiffs' theories, predicated on the idea that MetLife owed Plaintiffs a duty, must fail.  Thus, MetLife's First Cause of Action For Breach of Duty of Good Faith and Fair Dealing and Second Cause of Action for Breach of Contract both fail, because MetLife had no duty of any kind to maintain the Policy in force,  The Third Cause of Action for Negligence fails for the same reason, and because negligence is not among the theories generally available as against insurers, as Plaintiffs concede in their opposition brief."  (Emphasis in original.)

Judgment was subsequently entered in favor of MetLife and plaintiffs appeal.

## CONTENTIONS ON APPEAL

Plaintiffs contend the trial court erred because the notice requirements in Family Code sections 2050 and 2051[2] imposed a duty on MetLife to notify them about the change in the status of the Policy.  They also contend that because MetLife breached its duty to provide notice, it is liable for damages under the breach of contract, breach of the duty of good faith and fair dealing and negligence causes of action.

MetLife contends in response that the plain language of sections 2050 and 2051 provides only for the text of a letter but does not impose any duty on the insurer.  It argues that because those sections do not impose a duty, it cannot be held liable to plaintiffs under any of the causes of action alleged.  It also argues in the alternative that even if a duty is imposed under sections 2050 and 2051, negligence is not a theory of recovery available against insurers.

## DISCUSSION

### 1.  Judgment on the Pleadings Rules

A motion for judgment on the pleadings challenges the sufficiency of the causes of action in the complaint.  In reviewing a motion for judgment on the pleadings, we review the complaint de novo, and assuming all the properly pleaded material facts are true, determine whether the complaint alleges sufficient facts to state a cause of action or if

---

[2]    All subsequent undesignated statutory references shall be to the Family Code.

4

any defects can reasonably be cured by amendment.  We affirm a dismissal based upon an order granting the motion if it is proper on any grounds raised in the motion, and not only the reasons set forth by the trial court.  (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118; *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213-1214.)

    *2.  Section 2050*

Section 2050 provides: "Upon filing of the petition, or at any time during the proceeding, a party may transmit to, or the court may order transmittal to, a health, life, or disability insurance carrier or plan the following notice in substantially the following form:

"YOU ARE HEREBY NOTIFIED, PURSUANT TO A PENDING PROCEEDING, IN RE MARRIAGE OF _____, CASE NUMBER ____, FILED IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF _____, THAT OWNERSHIP OF, OR BENEFITS PAYABLE UNDER, A POLICY OF HEALTH, LIFE, OR DISABILITY INSURANCE WHICH YOU HAVE ISSUED TO ONE OF THE PARTIES TO THIS PROCEEDING, POLICY NO. _____, IS AT ISSUE OR MAY BE AT ISSUE IN THE PROCEEDING.  [¶]  YOU ARE HEREBY INSTRUCTED TO MAINTAIN THE NAMED BENEFICIARIES OR COVERED DEPENDENTS UNDER THE POLICY, UNLESS THE TERMS OF THE POLICY OR OTHER PROVISIONS OF LAW REQUIRE OTHERWISE, OR UNTIL RECEIPT OF A COURT ORDER, JUDGMENT, OR STIPULATION BETWEEN THE PARTIES PROVIDING OTHER INSTRUCTIONS.  [¶]  YOU ARE FURTHER INSTRUCTED TO SEND NOTICE TO THE NAMED BENEFICIARIES, COVERED DEPENDENTS, OR OTHER SPECIFIED PERSONS UPON CANCELLATION, LAPSE, OR CHANGE OF THE COVERAGE, OR CHANGE OF DESIGNATED BENEFICIARES UNDER THE POLICY."

Wendy sent the following notice on pleading paper, with the dissolution action caption: "TO METROPOLITAN LIFE INSURANCE COMPANY:

"YOU ARE HEREBY NOTIFIED, pursuant to a pending proceeding, In Re Marriage of Morrison, case number 97 D007787, filed in the Superior Court of the State of California, County of Orange, that ownership of, or benefits payable under, policies which you have issued to one of the parties to this proceeding, policy numbers 0098049-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-0 and 00980490-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-0, are at issue in the proceeding. [¶] You are hereby instructed to maintain the named beneficiaries or covered dependents and present benefits under the policies, unless the terms of the policies or other provisions of law require otherwise, or until receipt of a Court Order, Judgment, or Stipulation between the parties providing other instructions. [¶] You are further instructed to send notice to the named beneficiaries in care of the undersigned, covered dependents, or other specified persons upon cancellation, lapse, or change of the coverage, or change of designated beneficiaries under the policy."

Judgment was entered in the dissolution and stated, inter alia, "22. Husband shall for a period of twenty years, commencing the date on which the parties sign this Judgment, maintain and pay in a timely manner all premiums for a policy of insurance on his life with a minimum total death benefit of $1,300,000, and shall designate Wife as sole owner and beneficiary thereof until her death as to a $300,000 death benefit, Zachary Morrison as sole beneficiary as to a $500,000 death benefit, and Joel Morrison as sole beneficiary as to a $500,000 death benefit, commencing forthwith. *Husband shall do the necessary* [sic] *to cause the carrier of said policy to notify Wife in the event that the policy lapses or will lapse for any reason, including nonpayment of premiums, so that Wife will have ample opportunity to rectify the situation*, at which time Husband shall forthwith reimburse Wife for all amounts which she must advance to cure or prevent the lapse. In addition, *Wife is authorized to obtain all information concerning said policy directly from the provider and shall be notified directly by the provider in the event of any change or lapse in said policy, without the necessity of any prior authorization from Husband.* In the event that Husband is not in compliance with this paragraph at the time of his death, then each required beneficiary under this paragraph shall have a claim against his estate in the amount of the death benefit ordered herein. Husband may change

6

the policy holder at his election, so long as there is no lapse and he remains in full compliance with this paragraph."  (Italics added.)

MetLife apparently received a copy of the Judgment, [3] but Wendy did not send a notice pursuant to section 2051, which provides for notice to an insurer of a judgment in dissolution proceedings.[4]

MetLife contends that sections 2050 and 2051 simply provide the text for a notice to be sent to an insurer but do not impose any statutory duties on the insurer.  We consider this contention in light of the words of the statute and the legislative history.

---

[3]     In their opposition to the Motion for Judgment on the Pleadings, plaintiffs alleged they learned through discovery that MetLife had received a copy of the Judgment.

[4]     Section 2051 provides: "Upon the entry of an order or judgment in the proceeding requiring a party to maintain existing health, life or disability insurance coverage for a spouse or children or after an order or judgment in the proceeding requiring a party to purchase life or disability insurance and name to spouse or children as beneficiaries and upon receipt of the name, title, and address of the insurer, or the name of the plans' trustee, administrator, or agent for service of process, a party may transmit to, or the court may order transmittal to, the insurer or plan a copy of the order or judgment endorsed by the court, together with the following notice in substantially the following form:

"PURSUANT TO A PROCEEDING, IN RE MARRIAGE OF _____, CASE NUMBER _____, IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF _____,YOUR INSURED, ____ HAS BEEN ORDERED TO MAINTAIN THE EXISTING (HEALTH)(LIFE)(DISABILITY) INSURANCE, POLICY NO. _____, IN FORCE FOR THE NAMED BENEFICIARIES OR COVERED DEPENDENTS AS SPECIFIED IN THE ATTACHED ORDER OR JUDGMENT.  [¶]  THE ATTACHED ORDER OR JUDGMENT REQUIRES YOU TO MAINTAIN THE NAMED BENEFICIAIRES UNDER THE POLICY AS IRREVOCABLE BENEFICIARIES OR COVERED DEPENDENTS OF THE POLICY AND YOU MUST ADMINISTER THE COVERAGE ACCORDINGLY, UNTIL THE DATE SPECIFIED, IF ANY, IN THE ORDER OR JUDGMENT, OR UNTIL THE RECEIPT OF A COURT ORDER, JUDGMENT, OR STIPULATION PROVIDING OTHER INSTRUCTIONS.  [¶]  YOU ARE FURTHER INSTRUCTED TO SEND NOTICE TO THE NAMED BENEFICIAIRES, COVERED DEPENDENTS, OR OTHER SPECIFIED PERSONS UPON ANY CANCELLATION, LAPSE, OR CHANGE OF COVERAGE, OR CHANGE OF DESIGNATED BENEFICIARIES UNDER THE POLICY."

In interpreting a statute, the objective is to ascertain the Legislature's intent and thereby effectuate the purpose of the statute. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) To ascertain that intent, we begin with the statutory language, giving the words their usual and ordinary meaning. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see also *Smith, supra*, 39 Cal.4th at p. 83.)

"If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.""' (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272.)

We do not construe a statute in isolation, but rather construe it in context with reference to the entire scheme of law of which it is part so that the whole scheme may be harmonized and still be effective. (*Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14.) We presume that when enacting a statute, the Legislature was aware of existing laws and judicial decisions in effect at the time and intended to maintain a consistent body of rules. (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109.)

Reading the statutes literally, the terms clearly specify the text of a notice and are not ambiguous. The language provides that a party or court may transmit a notice and provides the text of the notice in quotation marks. It does not specify that an insurance company must take certain action once the notice is sent nor does it impose any mandatory duties on insurers.

Both parties nonetheless urged us to examine the legislative history, submitting voluminous documents in the record.

Both parties point to statements made in legislative hearings as support for their positions. MetLife claims the statements indicate an acknowledgment that the statute

8

provides nothing more than the text of a notice; plaintiffs contend that the enactment of the statute indicates an intent to impose a duty on the insurance companies. We have reviewed the documents and conclude that nothing in them demonstrates an intent other than that contained in the statutes. There is no indication of an intent to impose a mandatory duty on insurers to give notice.

Plaintiffs argue that if insurers do not have a duty to comply with the text of the notices, then sections 2050 and 2051, as well as 2053 which contains detailed mailing provisions, would be rendered useless. Plaintiffs then cite *California Teachers Assn. v. Governing Bd. of Rialto* (1997) 14 Cal.4th 627, 634 for the proposition that "We cannot presume the Legislature, . . . engaged in an idle act or enacted a superfluous statutory provision. [Citation.]"

The documents reveal that several related bills (AB 1141 and AB 4388) were proposed but never passed in the years prior to the 1990 enactment of sections 2050 and 2051. The concerns leading to those proposed bills were that "frequently in dissolution proceedings a spouse with ownership or control over an insurance policy will change the coverage for the dependents or change designated beneficiaries on the policy without court authorization or the agreement of the other spouse. . . . [T]his bill would eliminate unnecessary litigation in the family law context by providing notice and instructions to insurance carriers." (Comments from Assembly Committee on Judiciary for AB 1141 and AB 4388) AB 4388 initially proposed joining insurance companies in the marital dissolution proceedings in the same way pension plans were joined to ensure division of assets. Joinder was strongly opposed by insurance companies with the recognition that it would increase the costs of litigation for the parties to the dissolution proceedings. AB 4388 was later amended, omitting the joinder provisions and simply providing for notice to the carrier. It was approved by the Assembly but "held in the Senate by the author because of continuing discussions as to whether notice to the insurer was sufficient or whether the insurer should be joined as a party to a family law action."

9

In 1989, AB 1141 was introduced to amend the Civil Code with a similar statute providing the terms of a notice to be sent to a life insurance carrier. Joinder of insurance companies was contemplated, but ultimately not contained in the proposed language.

The Summary prepared for the Assembly Committee on Judiciary notes that: "This bill provides a notice, which provides specific instruction, to the insurer. However, the insurer is <u>not</u> specifically required by law to comply with the instructions of requiring the named beneficiary or any other court ordered beneficiary to become the irrevocable beneficiary. There are no sanctions imposed if the insurer fails to comply, although it is implied that the insurer would be subject to liability for damages pursuant to a separately filed tort action. A party would not be able to request the court in a family law action to compel the insurer to honor the notice created by this bill, until the insurer is joined as a party to the action. [¶] Should an explicit duty be established, in either the Family Law Act or the Insurance Code, requiring insurers to comply with this bill and imposing a sanction enforceable in either the family law action or by separate action?" (Emphasis in original.)

AB 1141 was also approved by the Assembly and delayed in the Senate "over the issue of whether the insurers should be joined or noticed."

When the current bill (AB 3974) was proposed in 1990,[5] there was an informational hearing of the Judiciary Committee on March 7, 1990. A Summary prepared for the Assembly Committee on Judiciary discusses the hearing in the Comment section. It states: "This proposal is based upon State Bar Conference of Delegate Resolution 9-2-86, which provided for joinder of the life, health or disability insurance company in the family law action. This bill provides, instead, a notice to the insurer that a family law matter is pending or that an order relating to the insurance policy has been entered. Two prior bills . . . were approved by the assembly: In 1988 AB 4388 (Wright) and in 1989, AB 1141 (Wright). Both bills were delayed in the Senate over the issue of

---

[5] AB 3974 was enacted as an amendment to the Civil Code. The statute was later reenacted as part of the Family Code. (Stats. 1992, c. 162.)

whether the insurers should be joined or noticed.  [¶]  This bill is anticipated to reduce some costs to parties to family law proceedings because it will better ensure that the parties entitled to insurance benefits will receive the benefits.  [¶]  The sponsor states that frequently in dissolution proceedings a spouse with ownership or control over an insurance policy will change the coverage for dependents or change designated beneficiaries on the policy without court authorization or the agreement of the other spouse.  Since the insurer has been neither joined to the action nor notified of pending family law proceeding, the carrier will allow the named owner of the policy to accomplish the change in coverage (including cancellation) or designation.  [¶]  The sponsor also states that an unauthorized change to the policy forces the beneficiary spouse or dependent to seek court assistance in rectifying the situation, which can be particularly complex if the owner-spouse has remarried and died.  The sponsor believes that this will help eliminate unnecessary family law litigation."

MetLife contends that the Judiciary Committee determined that compliance by insurance companies was only intended to be voluntary.  We have reviewed the transcript of the hearing, and have determined that the comments cited by MetLife were simply the views of Committee Chair Isenberg and were made during a discussion which also involved provisions of the bill relating to health insurance.  They were simply the viewpoint of a single legislator and were not observations about the ultimate reach of the statute.  Thus we cannot rely on these statements.  (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 726, disapproved on another point in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854, fn. 19; *Metropolitan Water Dist. V. Imperial Irr.* (2000) 80 Cal.App.4th 1403, 1425-1426.)

Because joinder of insurance companies had previously been contemplated but was not ultimately included in the approved language, it is clear there was no intent to bind a third party.  The Legislature had previously enacted statutes requiring joinder of pension plans in marital dissolution proceedings (§ 2060).  Since it did not make a similar provision here we can only conclude the omission was deliberate.  (*Bernard v. Foley* (2006) 39 Cal.4th 794, 811; *In re Jennings* (2004) 34 Cal.4th 254, 273.)  We cannot

11

conclude that sections 2050 and 2051 compel insurance companies to maintain beneficiaries or to send notice of cancellation, lapse, or change of coverage or beneficiaries. We therefore consider the question of whether, apart from these statutes, MetLife has a duty to plaintiffs.

### 3. Did MetLife Owe a Common Law Duty to Plaintiffs?

Since this matter is an appeal from the granting of a motion for judgment on the pleadings we only need to evaluate whether plaintiffs may proceed on any of the causes of action in the complaint: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) negligence.

Of those causes of action, the only ones which involve a duty owed by Met Life are the bad faith and negligence causes of action.

#### A. Negligence

A cause of action for negligence must allege a duty of care was owed by the defendant to the plaintiff. A duty of care may arise through statute or by contract. A duty may arise out of the general character of the activity in which the defendant engaged or out of the relationship between the parties. (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803.)

Whether a duty of care exists is a question of law. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57-58; *Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1233.) Since we have concluded that sections 2050 and 2051 do not impose a statutory duty, we examine whether a common law duty of care exists.

The factors to be considered in determining whether a duty of care exists between parties who do not have a contractual relationship were set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's

conduct and the injury suffered, the moral blame attached to the defendant's conduct and the policy of preventing future harm." (*Id*. at p. 650.) We examine each of these factors.

### 1. *Extent to which the transaction was intended to affect plaintiffs*

In *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397, the court recognized that there are pragmatic considerations in extending the duty of care. *Bily* held that with respect to an auditor's liability to investors in a company for negligent preparation of an audit report, a foreseeable risk of injury, standing alone, is not sufficient to impose liability for negligent conduct. The recognition of a duty to members of the public who might rely on the audit report could lead to a disproportionate imposition of liability. (*Id*. at p. 403.)

The contract of life insurance between Peter and MetLife was intended to benefit plaintiffs. Peter initially bought the Policy for the purpose of leaving money for his family when he died. Clearly it was not to benefit Peter, because there would be no payment until he had died. Once the dissolution petition was filed, the divorce court's imposition of an order commanding Peter to keep the Policy in effect was to preserve that asset for the benefit of plaintiffs. The court order, however, was directed at Peter obligating him to maintain the Policy. The order did not name MetLife or order it to do anything. So while the Policy was intended to benefit plaintiffs, any duty to keep it in effect was Peter's.

### 2. *Foreseeability of harm*

The termination of the Policy would clearly have a foreseeable effect on Wendy and children, since they were named as beneficiaries. Life insurance exists to protect against the foreseeable event of death. The notice informed MetLife that the $1 million Policy was considered an asset in the dissolution proceedings and that Peter had been ordered to maintain the Policy with Wendy and the children as beneficiaries. Again, the court order was directed at Peter and provided that plaintiffs' recourse was against his estate. Therefore, it was not foreseeable that MetLife's actions would harm plaintiffs because it had no basis to believe Peter would violate a court order or cancel the Policy

13

without informing plaintiffs or leave a valueless estate. (*Richard B. Levine Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 582.)

### 3. *The degree of certainty of injury*

There is no question that plaintiffs could prove they suffered injury from the cancellation of the Policy. But there was far less of a degree of certainty that the injury would have resulted from the lack of notice. As discussed previously, MetLife would not have known Peter would have violated a court order and left nothing in his estate. The degree of certainty of injury was not absolute. (*Mintz v. Blue Cross* (2009) 172 Cal.App.4th 1594, 1612-1613.)

### 4. *The connection between the conduct and the harm*

The theory of the complaint is that MetLife's failure to notify resulted in the loss of a marital asset. This loss would still have to be proven at trial, and Wendy would have to show that she could have obtained a court order for Peter to reinstate the Policy or make the premium payments herself. There was a connection between the conduct and the harm but it depended on many variables. (*Quelimane Co. v. Stewart Title Guaranty Co., supra,* 19 Cal.4th at p. 58; *Giacometti v. Aulla* (2010) 187 Cal.App.4th 1133, 1140.)

### 5. *Moral blame*

"Negligence in the execution of contractual duties is generally held to be morally blameworthy conduct. [Citation.]" (*Nat'l Union v. Cambridge, supra,* 171 Cal.App.4th at p. 47.) Here, however, there was no contract between MetLife and plaintiffs. We cannot conclude MetLife was morally blameworthy. (*Richard B. Levine, Inc. v. Higashi, supra,* 131 Cal.App.4th at p. 582.) The only morally blameworthy party here was Peter.

### 6. *Policy of preventing future harm*

*Bily* noted that "As a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence and contract power, as well as other information tools." (*Bily v. Arthur Young & Co., supra,* 3 Cal.4th at p. 403.)

The parties dispute whether Wendy could have discovered information about the Policy on her own by directly requesting it from MetLife or Peter.

14

Insurance Code section 791.13 prohibits an insurance company from disclosing "personal or privileged information about an individual collected or received in connection with an insurance transaction." There are several exceptions enumerated in the section: (1) if there is written authorization of the individual (subd. (a)); (2) if it is otherwise permitted or required by the law (subd. (g)); or (3) if it is requested by a "person shown on the records of an insurance institution . . . as having a legal or beneficial interest in a policy of insurance. . . ." (subd. (r)).

The judgment provides that Wendy was "authorized to obtain all information concerning said policy directly by the provider and shall be notified directly by the provider in the event of any change or lapse in said policy, without the necessity of any prior authorization from Husband."

Wendy thus could have requested notice from MetLife to ascertain the Policy's status over the years in addition to sending the section 2050 notice and copy of the judgment. The record contains no other evidence of a request for information. Wendy did not send a post-judgment section 2051 notice which would have explicitly informed MetLife of the judgment. Wendy also could have insisted on a provision in the judgment of marital dissolution requiring Peter to provide her with annual accountings or proof that he had made the premium payment, and file an appropriate order to show cause in the family law case if Peter failed to provide such proof for any year. Even without such an explicit provision in the judgment of marital dissolution, Wendy could have requested information about the status of the policy from Peter at any time during 1999-2010. Instead, she did nothing during those years to ensure and compel Peter's compliance with his obligations to maintain the insurance policy.

### 7. Conclusion from *Biankaja* factors

Examining all the factors set forth in *Biankaja, supra*, 49 Cal.2d 647, we conclude that no duty can be imposed on MetLife to give notice to plaintiffs. While some factors may weigh in favor of finding a duty, others do not. We are reluctant to impose a duty especially when the Legislature has considered this issue more than once and opted not to impose one.

15

B. *The duty of good faith and fair dealing*

MetLife maintains that there can be no duty of good faith and fair dealing imposed with respect to someone who is a not a party to the insurance contract. We agree that without either a statutory or common law duty and in absence of a specific request from Wendy after the entry of judgment, there is nothing to which a duty of good faith and fair dealing can attach.

C. *Breach of contract cause of action*

The motion for judgment on the pleadings for the breach of contract cause of action was properly granted. Since plaintiffs had no express contract with MetLife and it is undisputed that Peter failed to pay the premiums, plaintiffs cannot state a cause of action for breach of contract for MetLife's denial of claim benefits.

*DISPOSITION*

While we have concluded that neither sections 2050 nor 2051 impose an affirmative duty on life insurers and no common law duty exists in this case, we do so with extreme reluctance. The Legislature's apparent belief that the statutory notice would be sufficient, and that insurers would voluntarily comply with notices sent pursuant to the statute, was overly optimistic. The very dangers identified by those who unsuccessfully tried to include a joinder provision in the statute have materialized in this case. Therefore, we urge the Legislature to clarify the extent of duties owed by life insurance carriers in dissolution proceedings. Until then, we cannot presume a duty exists from the unambiguous terms of sections 2050 and 2051.

The judgment in favor of MetLife is affirmed. The parties are to bear their own costs on appeal.

**WOODS, Acting P. J.**

**We concur:**

**ZELON, J.**                                    **SEGAL, J.***

_____

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16